Matthew T. Christensen, ISB: 7213
JOHNSON MAY
199 N. Capitol Boulevard, Suite 200
Boise, Idaho 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@johnsonmaylaw.com

Jason E. Rios, CA State Bar No.190086
(*Pro Hac Vice*)
FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP
500 Capitol Mall, Suite 2250
Sacramento, CA  95814
Phone: (916) 329-7400
Fax: (916) 329-7435
Email:  jrios@ffwplaw.com

*Attorneys for Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 22-00346-NGH |
| OFF-SPEC SOLUTIONS, LLC, dba COOL MOUNTAIN TRANSPORT, | Chapter 11 Subchapter V |
| Debtor. | |

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
### (Subchapter V)

This Second Amended Plan is for a small business debtor under Subchapter V of Chapter 11 of the U.S. Bankruptcy Code. Pursuant to the requirements of 11 U.S.C. § 1190, this Second Amended Plan includes "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization."

PLEASE TAKE NOTICE THAT the Debtor shall submit to the Court a proposed order and notice of confirmation hearing ("Order/Notice") which complies with LBR 3018.1 and establishes the confirmation hearing date, location, and time; the last day to object to the Second Amended Plan; and the last day to submit ballots. Such proposed order/notice must be approved as to form by the subchapter V Trustee, the United States Trustee. The Debtor shall serve such

Order/Notice, a copy of the Second Amended Plan, and a ballot on all parties in interest, the United States Trustee, and the subchapter V Trustee. The Order/Notice shall set forth the confirmation hearing date, location, and time; the last day to object to the Second Amended Plan; and the last day to submit ballots.

YOUR BALLOT STATING HOW YOU ARE VOTING ON THIS SECOND AMENDED PLAN MUST BE RETURNED BY THE DEADLINE INDICATED ON THE ORDER/NOTICE. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Johnson May, Attn: Matt Christensen, 199 N. Capitol Blvd., Ste 200, Boise ID 83702.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THIS SECOND AMENDED PLAN, YOU MAY OBJECT TO CONFIRMATION OF THIS SECOND AMENDED PLAN BY FILING AN OBJECTION WITH THE BANKRUPTCY COURT BY THE OBJECTION DATE AND TIME INDICATED ON THE ORDER/NOTICE.

A HEARING ON THE CONFIRMATION OF THIS SECOND AMENDED PLAN WILL BE INDICATED ON THE ORDER/NOTICE.

Your rights may be affected by this Second Amended Plan. You should consider discussing this document with an attorney.

## **DEBTOR OVERVIEW**

A.    <u>Nature and Brief History of the Business Operations of the Debtor</u>.

Cool Mountain is a limited liability company formed under the laws of Delaware.

As of the Petition Date, Cool Mountain owned and operated 79 tractor trucks nationally across the lower 48 states. Cool Mountain is one of the Intermountain West's larger transportation providers, serving regional and national food producers for refrigerated transportation as well as some local routes hauling agricultural byproducts. Founded in 2009 and headquartered in Nampa, Idaho, Cool Mountain is a leading asset-based over-the-road ("OTR") trucking company that provides refrigerated and dry van transportation services to leading food services companies and agricultural producers. OTR hauling includes longer hauls where the driver or drivers will sleep in their sleeper cabs when not on the road. Cool Mountain also hauls dedicated freight; in contrast to OTR hauling, dedicated drivers work very consistent lanes and generally only run those consistent lanes; those lanes are contracted to Cool Mountain. Cool Mountain's dedicated route customers include three top-tier clients who provide substantial business and timely payment: Simplot, Franz Bakery and WinCo.

Cool Mountain's ownership changed in 2018. Since the ownership change, Cool Mountain expanded its services and steadily increased its revenue and establishing itself as a regional transportation leader in the greater Idaho marketplace and eventually through the entire United States.

B.    Events Leading to the Filing of the Bankruptcy Case

The Debtor's business was impacted by a reduction in revenues over the past several years from the Covid pandemic. For example, Cool Mountain's revenues were $16,400,000 in 2019, then dipped for several months and ultimately ended at $18,100,000 during the first Covid year, 2020, and rose to $19,700,000 in 2021. In addition, fuel prices doubled in 2022 over 2021 and supply chain issues kept trucks in the shops for several months generating no revenue while Cool Mountain continued to pay lease or financing costs.

In late 2021, Cool Mountain hired its current President and CEO, Richard Coyle, who has been leading the restructuring of the Debtor's business. The immediate cause for this Chapter 11 filing was the need to restructure Cool Mountain's tractor truck fleet and reduce expenses to achieve profitable operations. The reorganization that the Debtor has sought to achieve includes a "hard pivot" to tighter geography servicing the Pacific Northwest and California instead of the entire lower 48 states. It further calls for an overhaul of safety – i.e. focus on hiring the right people, constant training and monitoring of performance: accidents, claims, insurance premiums and related costs and collateral in years prior under prior management have been very costly.

C.    Significant Events During the Bankruptcy Case

After its bankruptcy filing, the Debtor initially reduced its tractor fleet from 79 to 41 tractors and its employees from 82 to 54. Cool Mountain also reduced its service area to focus on the Pacific Northwest and California to minimize dead mileage runs and consolidate the Debtor's tractors to maximize their availability for multiple drivers to better serve customer orders and help the Debtor build better relationships with a tighter network of third-party vendors. These changes have substantially reduced the Debtor's operating expenses, while maintaining strong sales and revenues. The Debtor has further been implementing its safety overhaul and has seen much improvement in its safety record and related lower costs. Cool Mountain has also sought to meet additional client demand by utilizing independent owner-operators who are to be paid a portion of the overall revenue from the load. These owner operators are also responsible for fuel, insurance, providing their own truck, etc., which saves the Debtor costs.

The Debtor filed a proposed Chapter 11 Plan on November 3, 2022 (Docket No. 114) (the "Original Plan"). While the Debtor had hoped to proceed promptly to confirmation of the Plan, the Debtor ran into several challenges to execution of that goal, including: (i) difficulties in recruiting independent owner-operators due to large companies (e.g., Amazon) paying substantially above typical market rates over the Holiday season, (ii) difficulties increasing revenues due to the failure to retain the additional drivers, (iii) the Holiday/Winter months generally being the slowest season for trucking transportation, (iv) extreme weather, (v) disappointing auction results from the auction of 20 surplus tractor trailers through IronPlanet which netted substantially less than the Debtor had procured as an alternative through private sale, and (vi) substantial "Availability" payments required to Fifth Third Bank pursuant the Court's cash collateral order that were significantly larger than projected.

As a result of these setbacks, the Debtor's sales and collections have been substantially less than anticipated and its ability to meet its Original Plan budget and the timing of its payments to

DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
(SUBCHAPTER V) – PAGE 3

creditors have been adversely impacted.

Notwithstanding the foregoing, the Debtor continues to work towards a successful reorganization and the Debtor filed a First Amended Plan of Reorganization on May 31, 2023 (Docket No. 233). Since the filing of the First Amended Plan, the Debtor has worked through solutions and plan treatment for multiple key parties in interest and is now prepared to move forward to emerge from bankruptcy as provided by this Second Amended Plan. As set forth in this Second Amended Plan, the Debtor has/will have further reduced its fleet of tractors from 41 to 14 and its employees from 54 to 26. The Debtor will continue to serve is customers by adding more owner operators, who pay their own operating expenses which minimizes the Debtor's costs.

Other significant events during this bankruptcy case include the following:

- Professionals. The Debtor has successfully employed counsel and a restructuring consultant in this case, and are otherwise actively seeking to get this Second Amended Plan confirmed.

- Case Administration. Additionally, the Debtor has successfully negotiated various parties in interest and obtained Final Orders approving the Debtor's continuing use of cash collateral (Dkt. No. 85); continued use of existing bank account and cash management systems (Dkt. No. 89); and ensure wage payments for its employees (Dkt. No. 90).

- Sales of Equipment. The Debtor sold 20 Peterbilt Tractors with Bankruptcy Court approval free and clear of all liens with all proceeds to be paid to secured creditor Fifth Third Bank, N.A. The Debtor also sold 3 surplus trailers with Bankruptcy Court Approval.

- Lease Rejections. The Debtor rejected 9 tractor leases with Penske Truck Leasing Co. L.P. pursuant to Bankruptcy Court approval (Dkt. No. 103). The Debtor rejected a real property lease with GMB, LLC (Dkt. No. 135). The Debtor rejected its tractor leases with Ryder Truck Rental, Inc. (Dkt. No. 274).

- Salvador Disputes and IRS Claim. The Debtor obtained Bankruptcy Court approval for a compromise that resolved litigation with the Salvadors, eliminated the Salvadors' claims against the Estate of approximately $1.9 million each, satisfied the Ataraxis Claim, the release of the Salvadors' remaining minority ownership interest in the Debtor and satisfied substantially all of an IRS Claim priority claim in excess of approximately $422,000. It also provided for the release of funds held in a tax escrow to Transportation Investors (Dkt. No. 209).

- Nondischargeability and Lafferty Disputes. The Debtor obtained dismissal of two adversary proceedings alleging nondischargeability of debts. One of those dismissals for the adversary proceeding filed by a former employee, Christina Lafferty, remains pending on appeal. The Debtor has filed an objection to the Lafferty Proof of Claim No. 34 (the "Lafferty Claim"), which remains pending. Lafferty has a pending motion for relief from stay, a motion to determine her proof of claim timely filed, and a motion to stay this bankruptcy case. These motions remain pending.

- <u>Relief From Stay Motions</u>.  PACCAR Financial Corp ("PACCAR") filed a motion for relief from stay relating to 4 tractors.  The Debtor surrendered the 4 tractors subject to this motion and relief from stay was granted as to the 4 tractors.  XTRA Lease LLC filed a motion for relief from stay relating to 30+ leased trailers.  The Debtor has/will return all XTRA Lease trailers.  Alliance Funding Group filed a motion to reject lease and/or for payment of administrative expenses.  The Debtor opposes this motion.

- <u>XTRA Lease Administrative Claim</u>. The Court entered an order allowing XTRA Lease an Administrative Claim in the amount of $140,530.  See Docket No. 272.

- <u>Post-Petition Loan</u>.  The Debtor obtained an order from the Bankruptcy Court (Dkt. No 218) authorizing the Debtor to obtain post-petition financing pursuant to sections 364(b) and 503 of the Bankruptcy Code in the amount of up to $1,400,000 pursuant to a post-petition convertible Loan from the Debtor's sole member, Transportation Investors, LLC (the "Credit Facility").  The order further provides Transportation Investors shall have an administrative claim for the amount of any funds advanced pursuant to the Credit Facility with the amount of such claim convertible to a capital contribution qualified towards new value at confirmation of a plan of reorganization.  The Loan Agreement provides that draws on the Credit Facility must be approved by Transportation Investors in its sole and absolute discretion.  Transportation Investors has agreed to make up to $840,000 of a Credit Facility available to the Debtor as necessary to pay the Effective Date payments and certain operating expenses pursuant to the Second Amended Plan Budget attached as Exhibit B, but only if the Court enters an order confirming the Second Amended Plan and if the Debtor continues to operate materially consistent with the Second Amended Plan Budget.

- Central Valley Fund III SBIC, LP ("CVF III"), a creditor and affiliate of the Debtor acquired the debt owed to the Debtor's senior secured lender, Fifth Third Bank, N.A., the loan documents related thereto, and the secured proof of claim filed by Fifth Third Bank as Claim No. 9.  CVF III acquired this debt and secured claim with the intent to provide favorable terms to the Debtor for treatment of the senior secured claim and to avoid the potential objections to confirmation from the senior secured lender, Fifth Third Bank.  Thus, CVF III's acquisition of the Fifth Third senior secured claims is a major step for the Debtor to achieve confirmation of this Second Amended Plan and emerge from bankruptcy.

- Transportation Investors has funded $194,000 of the Debtor's collateral obligation to the Debtor's captive insurance group to facilitate the removal the letter of credit posted by Fifth Third Bank in the amount of $578,326 which was a condition to the Bank's assignment of its secured claim to CVF III.  Transportation Investors provided this funding to help the Debtor's estate on the condition that this Second Amended Plan provide that the first $194,000 that may be refunded by the insurer from any collateral be paid to Transportation Investors.

D.    <u>Filed Monthly Operating Reports</u>

The Debtor has filed monthly operating reports that detail the revenue, expenses, and other

financial events during the course of the case. These reports are available for review by contacting Debtor's counsel or by online access through PACER.

E.    Liquidation Analysis.

To confirm the Second Amended Plan, the Court must find that all creditors and equity interest holders who do not accept the Second Amended Plan will receive at least as much under the Second Amended Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Second Amended Plan as Exhibit A. Pursuant to the liquidation analysis, assuming the Debtor's assets are liquidated by a Chapter 7 Trustee, there would be approximately $407,000 in funds available after approximately three years due to the fact that a large part of those available funds, if any, would be coming from a Wheels Insurance reserve account and would only be available after Wheels Insurance processes applicable claims. The Debtor does not believe that any of these funds would be available for general unsecured creditors because the total unpaid administrative claims exceed this amount. Therefore, the projected recovery for general unsecured creditors after liquidation is $0.00.

The Debtor has evaluated the transfers made within 90 days of the petition date and estimates that approximately $7,000 could be recovered through avoidance actions. This amount would go towards payment of substantial unpaid administrative claims. Similarly, any recovery or avoidance of post-petition transfers would not be expected provide any additional funds for general unsecured creditors since such recovery would just be reallocated among the unpaid administrative claims.

F.    Feasibility Projections.

The Second Amended Plan Proponent must also show that it will have enough cash over the life of the Second Amended Plan to make the required Second Amended Plan payments and operate the debtor's business.

i.    The Debtor has provided projected financial information in the Second Amended Plan Budget attached as Exhibit B. Exhibit B includes the Debtor's projected income and expenses over the term of this Second Amended Plan, which is 60 months.

ii.   The Debtor's financial projections are based on projected sales of the Debtor's trucking operations and show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of approximately $1,700,000 for payment to unsecured creditors, depending on the allowed nature of unsecured creditor claims. Based on the anticipated class of unsecured creditors, the Debtor projects general unsecured creditors will receive approximately 27% of their allowed claim amount, provided all claim objections are resolved, the estimates for lease rejection claims are not exceeded, and the disputed claims disallowed. This projection is a rough estimate, not a promise of payment and is based upon the Debtor's estimates of the allowed amounts

of general unsecured claims before the rejection claims that may be asserted have been allowed.  If the general unsecured claims are allowed in greater amounts, the rejection damages asserted in greater amounts or other assumptions, projections or estimates vary, the pro-rata recovery for general unsecured creditors is expected to decrease.

iii.    The Effective Date payments and certain operating expenses will be paid from a loan from the Debtor's sole member, Transportation Investors, LLC in an amount up to $1.4 million. As set forth in Article 7, Means of Implementation, Transportation Investors has agreed to make up to $840,000 of a Credit Facility available to the Debtor as necessary to pay the Effective Date payments and certain operating expenses pursuant to the Second Amended Plan Budget attached as Exhibit B, but only if the Court enters an order confirming the Second Amended Plan and if the Debtor continues to operate materially consistent with the Second Amended Plan Budget.  As set forth in the projections provided in Exhibit B, with these funds from Transportation Investors, the Debtor reasonably expects to be able to make the payments provided for by this Plan. The Debtor notes, however, that if the Plan is not confirmed, Transportation Investors will not provide the funding, the Debtor will not have sufficient funds to continue operations, the Debtor will proceed with liquidation and/or conversion to Chapter 7 or dismissal.

iv.    The final Second Amended Plan Payment is expected to be paid on or around August 31, 2028.

v.    You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## ARTICLE 1
## PLAN SUMMARY

1.1    This Second Amended Plan of Reorganization under Chapter 11 of the Code proposes to pay the Debtor's creditors from cash flow from Cool Mountain's trucking operations as set forth herein.

1.2    As required by the Bankruptcy Code under § 1123(a)(1), this Second Amended Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. This Second Amended Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. If this Second Amended Plan is confirmed, each Creditor's recovery is limited to the amount provided in this Second Amended Plan.

1.3    Only Creditors in classes that are impaired may vote on whether to accept or reject this Second Amended Plan, and only Creditors holding Allowed Claims may vote. A class that is not impaired is deemed to accept this Second Amended Plan.

1.4    This Second Amended Plan provides for:

| | |
|---|---|
| Two (2) | Classes of priority claims |
| Twelve (12) | Classes of secured claims |
| Two (2) | Classes of non-priority unsecured claims |
| One (1) | Class of equity security holders |

1.5    This Second Amended Plan includes two categories of claims held by CVF III.  For the first category, the Second Amended Plan includes and provides treatment for the secured claims that CVF III acquired post-petition by assignment from Fifth Third Bank as scheduled in Class 2.  For the second category this the Second Amended Plan includes and provides treatment for amounts loaned to the Debtor by The Central Valley Fund II ("CVF II") and CVF III pursuant to certain pre-petition loans.  While the Debtor granted CVF II and CVF III security interests in all of its assets pre-petition, CVF II and CVF III did not perfect their liens by filing UCC-1 financing statements.  Accordingly, this Second Amended Plan treats the prepetition debts owed to CVF II and CVF III as general unsecured claims in Class 14 notwithstanding any liens or security interests granted by the Debtor to CVF II and CVF III pre-petition.

1.6    Non-priority unsecured creditors holding allowed claims will receive pro rata distributions of funds totaling approximately $1,700,000.00 to the class. This Second Amended Plan also provides for the payment of allowed administrative and priority claims. The Second Amended Plan also provides for payment of allowed lower-level non-priority unsecured claims (i.e., tardy unsecured claims), if any.

1.7    All creditors and equity security holders should refer to Articles 3 through 7 of this Second Amended Plan for information regarding the precise treatment of their claim.

1.8    Your rights may be affected.  You should read this Second Amended Plan carefully and discuss it with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.

## <u>ARTICLE 2</u>
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1.1    <u>Class 1a</u>. This class shall consist of all allowed claims entitled to priority under §507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.1.2    <u>Class 1b</u>.  This class shall consist of the disputed priority claim asserted by the Department of Treasury – Internal Revenue Service filed as Claim No. 7 (the "IRS Class 1b Claim").

2.2    <u>Class 2</u>.  This class shall consist of the secured claim held by CVF III as assignee of Fifth Third Bank, N.A. ("Fifth Third") as an allowed secured claim under § 506 of the Code

in the amount of $959,385 as detailed in the Court's final order authorizing the use of cash collateral, Docket No. 85 (the "Cash Collateral Order").

2.3     Class 3. This class shall consist of the claim of Daimler Truck Financial Services USA LLC ("Daimler") individually and as successor to Mercedes-Benz Financial Services USA LLC ("Mercedes") as an allowed secured claim under § 506 of the Code in the amount of (i) $116,894 as of May 31, 2023 for the obligation secured by the tractor on Exhibit C with VIN ending 5866, (ii) $289,382 as of May 31, 2023 secured by the 2 tractors on Exhibit C with VINs ending 5867 and 5868 identified on Exhibit C, and (iii) $397,320 secured by the 4 tractors on Exhibit C with VINs ending 8863, 8864, 8865, 8866.

2.4     Class 4. This class shall consist of the claim of PACCAR Financial Corp. ("PACCAR") as an allowed partially secured claim under § 506 of the Code secured by the tractors identified on Exhibit C as PACCAR Collateral.

2.5     Class 5.  This class shall consist of the claim of BMO Harris Bank N.A. ("BMO") as an allowed secured claim in the amount of $280,000 under § 506 of the Code secured by the 4 tractors identified on Exhibit C as BMO Collateral.  The remaining balance of the BMO claim in the amount of $100,802 shall be treated as a $30,664 administrative claim and a $70,138 Class 14 general unsecured claim.

2.6     Class 6. This class shall consist of the claim of Ascentium Capital (the "Ascentium") as an allowed fully secured claim under § 506 of the Code in the amount of $375,588 as of May 31, 2023 secured by the tractors identified on Exhibit C as Ascentium Collateral.

2.7     Class 7. This class shall consist of the claim of Crossroads Equipment Lease and Finance, LLC ("Crossroads") as an allowed fully secured claim under § 506 of the Code secured by the tractors identified on Exhibit C as Crossroads Collateral.

2.8     Class 8. This class shall consist of the claim of Pawnee Leasing Corporation ("Pawnee") as an allowed fully secured claim under § 506 of the Code secured by the tractors identified on Exhibit C as Pawnee Collateral.

2.9     Class 9. This class shall consist of the claim of Pathward, National Association ("Pathward") fka Crestmark Equipment Finance, a division of MetaBank as an allowed fully secured claim under § 506 of the Code secured by the tractors identified on Exhibit C as Pathward Collateral.

2.10    Class 10. This class shall consist of the claim of Key Equipment Finance, a division of KeyBank N.A. ("KeyBank") as an allowed fully secured claim under § 506 of the Code secured by the tractors identified on Exhibit C as KeyBank Collateral.

2.11    Class 11.  This class shall consist of the claim of National Interstate Insurance Co. ("National Interstate") as an allowed fully secured claim under § 506 of the Code in the amount of $231,879.66 secured by setoff of $250,939 owed to the Debtor as Audit refunds.

2.12    Class 12.  This class shall consist of the claims of WEX Bank and/or Electronic Funds Source LLC (collectively, "WEX") as an allowed fully secured claim under § 506 of the Code.

2.13    Class 13.  This class shall consist of the claim of Wheels Insurance as an allowed fully secured claim under § 506 of the Code.

2.14    Class 14. This class shall consist of all timely-filed (or not required to be filed) unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a) and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder. Class 14 includes the undisputed scheduled claims for CVF II and CVF III for amounts loaned to the Debtor by CVF II and CVF III pursuant to certain pre-petition loans, notwithstanding any liens or security interests granted by the Debtor to CVF II and CVF III.  Thus, pursuant to this Plan CVF II and CVF III shall lose their liens on the Debtor's assets that secure the Debtor's pre-petition loans from CVF II and CVF III.  This class does not include the secured claims that The Central Valley Fund III acquired post-petition from Fifth Third Bank as scheduled in Class 2. Those secured claims are treated in Class 2.  This class is referred to as the "General Unsecured Creditors" class.

2.15    Class 15. This class shall consist of all tardily-filed unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class.  The Debtor contends that the Lafferty Claim was tardily-filed and further disputes the merits of the Lafferty Claim.  Therefore, the Debtor contends that the Lafferty Claim if allowed in any amount should be treated as a Class 15 claim.  If the Court determines that the Lafferty Claim was timely filed, it shall be treated as a Class 14 claim.

2.16    Class 16. This class shall consist of the interests of the equity security holders of the Debtor.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND COURT FEES

3.1    Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) (other than the IRS Class 1b Claim) are not in a class.  These Claims are treated by this Second Amended Plan, as follows:

3.2    Administrative Claims Bar Date. All requests for payment of administrative costs and expenses incurred prior to the Effective Date pursuant to Bankruptcy Code §§ 507(a)(1) and 503(b), and all claims for professional fees, must be served and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date (the "Administrative Claims Bar Date"). Holders of administrative claims that do not, file and serve a request for payment of such claims

by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such claims against the Debtor, its Estate, or its assets and such claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be filed and served on the Debtor and its counsel, and the requesting party for the Administrative Claim no later than thirty (30) days after the date of filing of the of administrative costs and expenses that is the subject of the objection.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an administrative claim previously Allowed by a Final Order, including any and all administrative claims expressly allowed under the Second Amended Plan.

3.3    Ordinary Course Administrative Claims. Each holder of an administrative expense claim allowed under § 503 of the Code, other than allowed claims by the Debtors' professionals, the Subchapter V Trustee, Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"), lessors, or any creditors in classes 1 through 13 will be paid in full on the Effective Date of the Second Amended Plan, or on such date as the claim is allowed by order of the court, whichever is later, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. At this point, the Debtor is not aware of any such administrative claims asserted against the Debtor's estate other than ordinary course administrative claims being paid in the ordinary course of business.

3.4    Other Administrative Claims.  The Debtor's counsel, the Debtor's financial advisor, the Subchapter V Trustee, Gallagher, post-petition amounts owed to lessors, creditors in classes 1 through 13 shall be paid as follows:  **You should examine the proposed treatment of your claim carefully**.

a.    Lessors.  All administrative claims for lessors, if any, are to be paid as specifically provided in the Scheduled Vendor Payments attached as Exhibit B to the Second Amended Plan.

b.    Gallagher.  $20,000 as a reduced fee for any unpaid amounts owed to Gallagher as of the Effective Date shall be paid by the Debtor shortly after the Effective Date.

c.    Professionals and SubChapter V Trustee. The fees and costs allowed professional fees and costs of the Debtor's Professionals, the SubChapter V Trustee, shall be paid pro rata from the following: (1) $200,000 following the Court's entry of orders on the professional fee applications, and (2) the remaining balance ($222,119 estimated) on or before January 31, 2025. The Debtor reserves the right to pay any such allowed claims sooner in its discretion from available funds.  In addition to the foregoing, the fees and costs owed to professional persons employed by the Debtor may be paid by the Debtor's sole member, Transportation Investors, LLC.

3.5    Priority Tax Claims. Oregon Department of Transportation ("ODOT") has filed a proof of claim for unpaid prepetition road tax assessments in the amount of $44,102.  The Debtor is currently evaluating the detail provided by ODOT and may object to the ODOT claim.   With respect to a claim of a kind specified in § 507(a)(8) other than the IRS Class 1b Claim, the holder

of any allowed such claim will receive on account of such claim full payment of the allowed amount on the Effective Date. No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the timely-filed unsecured class within this Second Amended Plan, and shall be subject to any discharge granted to the Debtor under § 1192.

3.6    The IRS Class 1b Claim.  The Debtor disputes substantially all of the IRS Class 1b Claim No. 7 as amended in the amount of $89,702.73.  The Debtor is informed and believes that the FICA taxes asserted by the IRS Claim in the amount of $77,953.78 were all reported and paid by the Debtor.  The Debtor is in the process of obtaining and assembling the information related to this claim and shall file an objection to the IRS Class 1b Claim, if necessary.  In the event that the IRS Class 1b Claim is allowed in some amount, such allowed amounts shall be paid on the later of the Effective Date or the date the IRS Claim is allowed.

3.7    Post-Confirmation Tax Claims. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

### ARTICLE 4
### TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

4.1    Claims and interests shall be treated as follows under the Second Amended Plan:

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| 1 | Allowed claims entitled to priority (except admin and tax claims) | No | The Debtor is unaware of any allowed claims entitled to priority other than potential tax claims, so proposes no treatment for this class.  The treatment of potential tax claims is provided in Article 3. |
| 2 | CVF III by assignment from Fifth Third | Yes | CVF III shall have an allowed secured claim, as follows:<br><br>• The remaining balance of the Fifth Third Capital Expenditure Loan shall be allowed as a fully secured claim in the amount of $927,718, with a lien on all assets of the Debtor, including the funds held by WEX Bank and Wheels Insurance;<br><br>• The Fifth Third Term Loan shall be allowed as a secured claim in the amount of $31,667;<br><br>• The Fifth Third Line of Credit shall be allowed as a secured claim in the amount of $0.00. |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | • Attorneys' fees and costs in the amount of $0.00.<br><br>Capitalized terms not defined herein shall have the meaning as defined by the Cash Collateral Order provided that references in the Cash Collateral Order shall refer to CVF III as the assignee of Fifth Third's secured claim.  Until such time as CVF III's allowed secured claims have been paid in full, CVF III shall retain its priority liens and security interests on its Collateral.  Disbursements made to CVF III shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee.<br><br>CVF III's allowed secured claims shall be paid as follows:<br><br>Post-Confirmation Loan – The remaining balance of the Capital Expenditure Loan and the Term Loan shall combined into one loan with the principal amount due of $959,385 and amortized over 84 months at 10% interest and paid monthly beginning August 2024 with a final balloon payment due in July 2026 on the same terms and conditions as provided in the loan documents for the Capital Expenditure Loan and the Term Loan except as modified by this Second Amended Plan.<br><br>Revolving Line of Credit Loan – On the Effective the balance owed on the Revolving Line of Credit Loan is $0.00.  CVF III may but is under no obligation to reopen the Revolving Line of Credit Loan on the same terms and conditions as provided in the loan documents for that loan. |
| 3 | Daimler | Yes | The secured claim of Daimler in the amount of $116,894 as of May 31, 2023 for the obligation secured by the tractor on Exhibit C with VIN ending 5866 (the "5866 Claim") shall accrue interest at the non-default contract rate until paid in full.  The Debtor shall pay Daimler $8,151 on the Effective Date to cure all past due amounts owed on the 5866 Claim. Thereafter, the Debtor shall pay Daimler $2,716.92 per month until the remaining balance of the 5866 |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | Claim is paid in full.<br><br>The secured claim of Daimler in the amount of $289,382 as of May 31, 2023 for the obligation secured by the tractors on Exhibit C with VIN ending 5867 and 5868 (the "5867 and 5868 Claim") shall accrue interest at the non-default contract rate until paid in full.  The Debtor shall pay Daimler $24,864 on the Effective Date to cure all past due amounts owed on the 5867 and 5868 Claim.  Thereafter, the Debtor shall pay Daimler $6,216 per month until the remaining balance of the 5867 and 5868 Claim is paid in full.<br><br>Daimler's remaining claim in the amount of $397,320 as of May 31, 2023 shall be treated as follows:  the tractors on Exhibit C with VIN ending 8863, 8864, 8865, and 8866 shall be/have been surrendered to Daimler which together with a payment of $34,579 on the Effective Date shall constitute full satisfaction of any and all claims that Daimler might assert against the Estate.<br><br>Until such time as paid in full, Daimler shall retain its lien on the Daimler Collateral on which it had a pre-petition lien.  Disbursements made to Mercedes shall be made directly by the Debtor as set forth herein and shall not be paid through the subchapter V Trustee. |
| 4 | PACCAR | Yes | The Debtor has surrendered the 4 tractors securing the PACCAR claim to PACCAR.  The value of the 4 tractors exceeds the amount owed to PACCAR and the secured claim of PACCAR has been fully satisfied by the surrender of the PACCAR Collateral pre-confirmation.  PACCAR shall have no allowed claims against the Debtor or the Estate. |
| 5 | BMO | Yes | The secured claim of BMO shall be in the amount of $280,000 and shall be treated as follows:  (i) the tractors on Exhibit C with VIN ending 0161, 0162, 0163, and 0164 shall be/have been surrendered to BMO at a value of $70,000 each leaving a remaining unsecured balance of $100,802 of which $30,664 shall be paid on the Effective Date in satisfaction of any |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | administrative claims and the remaining balance of the BMO claim in the amount of $70,138 shall be treated as a Class 14 general unsecured claim.<br><br>BMO shall retain its lien on the BMO Collateral on which it had a pre-petition lien. |
| 6 | Ascentium | Yes | The secured claim of Ascentium shall be allowed in the amount of $375,588 as of May 31, 2023 plus interest at the non-default contract rate until paid in full.  Until such time as paid in full, Ascentium shall retain its lien on the Ascentium Collateral on which it had a pre-petition lien.  Disbursements made to Ascentium shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee.<br><br>Payment Terms.  The Debtor shall pay Ascentium $22,886 on the Effective Date to cure all past due amounts owed on the Ascentium Claim other than the Deferred Payments referenced below.  Thereafter, the Debtor shall pay Ascentium $9,154 per month until the remaining balance of the Ascentium Claim is paid in full.<br><br>Deferred Payments.  The Debtor's deferred payments for the Ascentium Tractors for August 2022 through February 2023 shall be deferred to the end of the term of the Ascentium Tractor Contracts.  In addition, the deferred 50% of the monthly payments for March and April 2023, in addition to all other amounts then outstanding, shall be paid by the Debtor in over two months after the expiration of the extended term in 2027. |
| 7 | Crossroads | Yes | The secured claim of Crossroads shall be allowed in the amount of $241,870 as of May 31, 2023 plus interest at the non-default contract rate until paid in full.  Until such time as paid in full, Crossroads shall retain its lien on the Crossroads Collateral on which it had a pre-petition lien.  Disbursements made to Crossroads shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee. |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | <u>Payment Terms</u>.  The Debtor shall pay Crossroads $24,039 on the Effective Date to cure all past due amounts owed on the Crossroads Claim other than the Deferred Payments referenced below.  Thereafter, the Debtor shall pay Crossroads $6,010 per month until the remaining balance of the Crossroads Claim is paid in full.<br><br><u>Deferred Payment</u>.  The Debtor's payments for the Crossroads Tractors for August, September, and October 2022 and unpaid 50% of the monthly payments for November 2022 through January 2023 shall be deferred to January 2024, in addition to all other amounts then outstanding (the "Deferred Amount").  The Debtor will pay the Deferred Amount in twelve equal sums on a monthly basis starting in January 2024 and ending in December 2024.   The monthly payment of the Deferred Amount shall be added to and be paid at the same time as the regular monthly payments as set forth in the Tractor Contracts. |
| 8 | Pawnee | Yes | The secured claim of Pawnee shall be allowed in the amount of $229,555 as of May 31, 2023 plus interest at the non-default contract rate until paid in full.  Until such time as paid in full, Pawnee shall retain its lien on the Pawnee Collateral on which it had a pre-petition lien.  Disbursements made to Pawnee shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee.<br><br><u>Payment Terms</u>.  The Debtor shall pay Pawnee $18,651 on the Effective Date to cure all past due amounts owed on the Pawnee Claim other than the Deferred Payments referenced below.  Thereafter, the Debtor shall pay Pawnee $6,217 per month until the remaining balance of the Pawnee Claim is paid in full.<br><br><u>Deferred Payments</u>.  The Debtor's Payments for the Pawnee Tractors for (i) August, September, and October 2022 shall be deferred to the end of the Tractor Agreements and (ii) 50% of the monthly Payments for November and December of 2022 shall be deferred to January 1, 2024, at which point, in addition to regular monthly Payments for all other |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | amounts then outstanding, the Debtor will make payments for the deferred amounts over six months beginning January 1, 2024. |
| 9 | Pathward | Yes | The secured claim of Pathward shall be allowed in the amount of $125,674 as of May 31, 2023 plus interest at the non-default contract rate until paid in full.  Until such time as paid in full, Pathward shall retain its lien on the Pathward Collateral on which it had a pre-petition lien.  Disbursements made to Pathward shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee.<br><br>Payment Terms.  The Debtor shall pay Pathward $9,188 on the Effective Date to cure all past due amounts owed on the Pathward Claim other than the Deferred Payments referenced below.  Thereafter, the Debtor shall pay Pathward $3,062.78 per month until the remaining balance of the Pawnee Claim is paid in full.<br><br>Deferred Payments.  The Debtor's payments for the Pathward Collateral for August 2022 through and including December 2022 shall be deferred to the end of the term of the Pathward loan with the loan extended for five (5) months for these five (5) deferred payments. |
| 10 | KeyBank | Yes | The secured claim of KeyBank shall be allowed in the amount of $43,942 as of May 31, 2023 plus interest at the non-default contract rate until paid in full.  Until such time as paid in full, KeyBank shall retain its lien on the KeyBank Collateral on which it had a pre-petition lien. Disbursements made to KeyBank shall be made directly by the Debtor as set forth below and shall not be paid through the subchapter V Trustee.<br><br>Payment Terms.  The Debtor shall pay KeyBank $25,169 on the Effective Date to cure all past due amounts owed on the KeyBank Claim.  Thereafter, the Debtor shall pay KeyBank $6,292.29 per month until the remaining balance of the KeyBank Claim is paid in full. |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| 11 | National Interstate | No | The claim of National Interstate shall be allowed in the amount of $196,864.73 secured by setoff of $250,939 owed from National Interstate to the Debtor as Audit refunds (the "Refund").

As of the Effective Date, National Interstate shall be authorized to apply a setoff of the allowed amount of its claim $196,864.73 against the Debtor's Refund. National Interstate may further retain the remaining balance of the Refund and offset premiums or deductibles from the remaining balance of the Refund as they come due for a period of eight months after the Effective Date.  The remaining balance of the Refund, if any, after 8 months shall be refunded to the Debtor.

Assumption of the National Interstate insurance contract(s) is addressed in Article 6. |
| 12 | WEX | | WEX is holding $325,000 of the Debtor's funds to secure payment of credit charges owed to WEX on its account.  The Debtor will continue to pay WEX in the ordinary course of business post-petition and WEX may continue to hold the $325,000 security deposit. |
| 13 | Wheels Insurance | | Wheels Insurance is holding $1,472,708 to secure payment of certain insurance obligations.  The Debtor will continue to pay Wheels Insurance in the ordinary course of business post-petition and Wheels Insurance may continue to hold and apply the security deposits in accordance with the agreements between the Debtor and Wheels Insurance.  In addition, Transportation Investors shall be entitled to receive the first $194,000 that may be refunded by Wheels Insurance from its collateral in consideration of Transportation Investors having posted $194,000 to remove the Fifth Third Bank letter of credit which has facilitated this Second Amended Plan. |
| 14 | All Allowed Non-Priority Unsecured Claims ("General Unsecured Claims") | Yes | This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, allowed claims arising out of the rejection of any executory contract, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent such claim is determined to be unsecured pursuant to 11 U.S.C. |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | §506(a), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.<br><br>As noted below in Class 15, this Plan designates the Lafferty Claim as a Class 15 Claim; provided, however, if the Court determines that the Lafferty Claim was timely filed and allows the Lafferty Claim in some amount, the allowed Lafferty Claim shall be treated as a general unsecured claim in Class 14.<br><br>The projected disposable income of the Debtor shall be paid during the life of this Second Amended Plan (60 months) to creditors holding allowed claims in this class, and on a pro rata basis, until such allowed claims are paid in full.<br><br>Depending on the outcome of various claim objection proceedings, the Debtor projects payment of approximately 27% of the allowed claims in this class provided that the disputed claims are disallowed. As noted above, this projection is a rough estimate, not a promise of payment and is based upon the Debtor's estimates provided all claim objections are resolved, the estimates for lease rejection claims are not exceeded, and the disputed claims disallowed. If the general unsecured claims are allowed in greater amounts, the rejection damages asserted in greater amounts or other assumptions, projections or estimates vary, the pro-rata recovery for general unsecured creditors is expected to decrease. |
| 15 | All Allowed Non-Priority Unsecured Claims that are tardily filed ("Tardily-filed General Unsecured Claims") | Yes | This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class, which consist of claims filed after the claims bar deadline. For avoidance of doubt, this Class 15 includes the disputed general unsecured claim untimely filed by Christina Lafferty and designated as claim No. 34 unless the Court grants Lafferty's pending motion to establish the Lafferty Claim as timely filed and denies the Debtor's pending objection to the timeliness and allowance of the Lafferty Claim; provided, however, if the Court determines that the Lafferty Claim was |

| Class No. | Holder of Claim or Interest | Impaired (Yes/No) | Second Amended Plan Treatment |
|---|---|---|---|
| | | | timely filed and allows the Lafferty Claim in some amount, the allowed Lafferty Claim shall be treated as a general unsecured claim in Class 14.<br><br>After all allowed claims in Classes 14 are paid, the remaining projected disposable income of the Debtor shall be paid during the remaining life of this Second Amended Plan (60 months in total), on a pro rata basis, until such allowed claims are paid in full.<br><br>As of the filing of this Second Amended Plan, the Debtor is not aware of any allowed claims in this class. |
| 16 | Equity Security Holders | | The Equity Security Holders (owners) of the Debtor shall retain all ownership rights in the Debtor. To the extent there is sufficient disposable income from the operation of the Debtor's business to pay all allowed claims in the other classes listed above, the balance of such disposable income shall be paid to this Class. |

4.2    <u>Waiver of Secured Status and Lien Rights by Claimants</u>. In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Second Amended Plan.

4.3    <u>Proof of Claim Controls Over Amount Scheduled by Debtor(s).</u> The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor' schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

4.4    <u>Voiding of Liens</u>. Except as otherwise provided under the Second Amended Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims and all liens not expressly preserved by the Second Amended Plan.

4.5    <u>Projected Recovery of Avoidable Transfers.</u> The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation by December 31, 2023. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.

## <u>ARTICLE 5</u>
## <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

5.1    <u>Objection to Claims</u>. The Debtor or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed

within such time will be deemed waived. If any claim or portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

5.2    Disputed Claim. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor(s), or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.3    Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtor' sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

5.4    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

## ARTICLE 6
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts and leases.

6.2    The Debtor assumes or rejects the following executory contracts and unexpired leases[1] as of the Effective Date (if not already assumed or rejected earlier) as follows:

| Name of Other Party to Executory Contract/Lease | Description | Plan Treatment |
|---|---|---|
| McKinney Trailer Rentals | Trailer Leases | The Debtor assumes its leases of 6 McKinney Trailers and 5 Dry Vans identified on Exhibit D as of the Effective Date as follows:<br><br>Payment Terms.  The Debtor shall pay McKinney $23,473 on the Effective Date of the |

---

[1] Notwithstanding the designation of any contract as a lease or executory contract in this Article 6 of the Plan, if any counterparty objects to the treatment provided by this Plan, the Debtor reserves all rights to amend this Plan to redesignate any such designated leased or executory contract as a secured claim to be treated in accordance with the standards for treatment of secured claims.

| | | Plan to cure all past due amounts owed to McKinney. The Debtor shall make regular monthly payments in the amount of $8,053 from June 2023 until the end of the lease term. |
|---|---|---|
| Penske | Trailer Leases | <u>Assumed Leases</u>. The Debtor assumes its leases for the 4 Penske Trailers identified on Exhibit D as "Retained" on the Effective Date as follows:<br><br><u>Cure Payment</u>. The Debtor shall pay Penske $110,890 on the Effective Date of the Plan to cure all defaults on the leases for the 4 Retained Penske trailers <u>and</u> the 5 Rejected Penske Trailers as noted below.<br><br><u>Payment Terms</u>. The regular monthly payments for the 4 Retained Trailers are as follows: (i) $841.51 + $0.0401/mile for each Retained Penske Great Dane; and (iii) $473.33 + $0.0629/mile for each Retained Penske Dry Van. The Debtor shall resume making monthly payments in June 2023. In addition to the foregoing, all other terms of the leases for the 4 Retained Trailers shall remain in effect following assumption.<br><br><u>Rejected Leases</u>. The Debtor rejects its leases for the 5 Penske Trailers identified on Exhibit D as Rejected (the "Penske Rejected Trailers"). The Penske Rejected Trailers have been/will be surrendered to Penske. All post-petition amounts owed regarding the Penske Rejected Trailers will be cured by the payment identified above. Any other amounts that may be asserted by Penske related to the Penske Rejected Trailers may be filed by Penske no later than 30 days after the Effective Date and such amounts as may be allowed shall be treated as a Class 14 general unsecured claim. |
| Penske | Tractor Leases | The 9 Returned Penske Tractors identified on Exhibit D have all been surrendered to Penske and the leases for the 9 Returned Tractors shall be deemed rejected as of the Petition Date pursuant to the Debtor's motion filed as Docket No. 103. The Debtor shall pay Penske for one |

| | | |
|---|---|---|
| | | month of post-petition rent for the 9 Returned Tractors in the aggregate amount of $21,772.35 on or before May 25, 2024.  Any allowed rejection claim for Penske shall be treated as a general unsecured claim. |
| Ryder | Tractor Leases | <u>Volvo Tractors and Freightliner Tractors</u>.  The Debtor rejects its leases for the 15 Ryder Tractors identified on Exhibit D as 10-2023 Volvo and 5-2020 Freightliner as of May 1, 2023 (the "Volvo Tractors" and "Freightliner Tractors").  See Motion to Reject at Dkt. No. 224.<br><br>The Debtor shall pay Ryder $5,422 per month through the end of the 60 month Plan Term in satisfaction of any administrative claims that Ryder may have against the Estate.  Any other amounts that may be asserted by Ryder related to the Volvo Tractors and Freightliner Tractors may be filed by Ryder no later than 30 days after the Effective Date and such amounts as may be allowed shall be treated as a Class 14 general unsecured claim.<br><br><u>Early Returned Tractors</u>.  The leases for the 4 Early Returned Tractors identified on Exhibit D as 4-2020 Freightliner shall be deemed rejected as of the Petition Date. The Debtor shall pay Ryder $315.71 per month through the end of the 60 month Plan Term in satisfaction of any administrative claims arising from the pro-rated periods for the 4 Rejected Tractors, which were as follows for serial numbers ending: (1) G6441 August 5, 2022 through on September 30, 2022; (2) G6442 August 5, 2022 through on September 20, 2022; (3) G6444 August 5, 2022 through on September 20, 2022, and (4) G6446 August 5, 2022 through on August 9, 2022 (collectively, the "Pre-Surrender Rent").  In addition, Ryder shall have an allowed lease rejection claim for the Rejected Tractors based upon the Schedule A Vehicle Component Value attached to Docket No. 137, which, for each vehicle, is $156,211.00 less monthly depreciation as provided by paragraphs 14(a) and 13(c) of the main Truck |

| | | |
|---|---|---|
| | | Lease and Service Agreement. The total lease rejection claim for the Early Rejected Tractors is $370,396.51 as set forth on Exhibit A attached to the Stipulation filed as Docket No. 137; provided, however, that when Ryder leases a Rejected Tractor, Ryder shall amend its claim to offset the rental income received for the Rejected Tractor(s) from the new lessee(s) for the remainder of the term of the rejected leases. |
| Wells Fargo | Trailer Leases | The Debtor assumes its leases for the 13 Wells Fargo Trailers identified on Exhibit D as of the Effective Date as follows:<br><br>Buyout Payment Terms.  The Debtor's buyout of the Wells Fargo Trailers for the sum of $111,538 shall be amortized over 36 months at the interest rate of 4.51%, which is the same effective interest rate as the Trailer Contracts. The monthly payment shall be $3,318.41 per month starting in December 2022 through November 2025. All monthly payments shall be due on or before the 15th day of each month.  Following the final payment, title to the Wells Fargo Trailers shall transfer to the Debtor.<br><br>Cure Payment: The Debtor shall cure on the Effective Date any payments not made to these terms up to that point. As of June 30th, this cure amount is anticipated to be $13,274 to be paid on the Effective Date. |
| Alliance Funding Group | Tractor Leases | The Debtor assumes its leases for the 2 Alliance Tractors identified on Exhibit D as of the Effective Date as amended by, and with payments to be made in accordance with, the Lease Deferral Agreement attached hereto as Exhibit E.<br><br>Cure Payment.  The Debtor shall cure on the Effective Date any payments not made to these terms up to that point. As of June 30th, this cure amount is anticipated to be $9,855 to be paid on the Effective Date. |

| | | |
|---|---|---|
| | | **Monthly Payments**. The Debtor shall continue making timely payments pursuant to the Lease Deferral Agreement until the lease expires. Following the final payment, title to the Alliance Tractors shall transfer to the Debtor. |
| Rocky Mountain Management & Development, LLC | Real Property Lease | The Debtor assumes its lease(s) for the real property located at 184 Industrial Park, 1428 Madison Avenue, Nampa, Idaho as of the Effective Date as follows:<br><br>**Cure Payment**.  All past due rent in the amount of $9,845 shall be cured on or around the Effective Date.<br><br>**Monthly Payments**.  The Debtor shall continue making timely payments pursuant to the Lease Agreement until the lease expires. |
| Xtra Lease | Trailer Leases | To the extent not already rejected, the Debtor rejects any and all leases with XTRA Lease.<br><br>The Debtor shall pay XTRA Lease $2,525 per month through the end of the 60 month Plan Term in satisfaction of any administrative claims that XTRA Lease may have against the Estate. Any other amounts that may be asserted by XTRA Lease related to any lease or rental of trailers to the Debtor or any repairs or damages to such trailers may be filed by XTRA Lease no later than 30 days after the Effective Date and such amounts as may be allowed shall be treated as a Class 14 general unsecured claim. |
| National Interstate | Insurance Contract | The Debtor assumes its unexpired insurance contract(s) with National Interstate.<br><br>**Payment Terms**.  The cure amount for the National Interstate Insurance contracts is $0.00. The Debtor shall continue to pay post-petition and post-confirmation deductibles as they come due in the ordinary course of business. |
| | | |

DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
(SUBCHAPTER V) – PAGE 25

| Aetna | Employee Benefits | The Debtor assumes its unexpired employee benefits contract(s) with Aetna.<br><br>Payment Terms.  The cure amount for the Aetna employee benefits contracts is $0.00.  The Debtor shall continue to pay post-petition and post-confirmation monthly invoices from Aetna as they come due in the ordinary course of business. |
|---|---|---|
| Samsara | | The Debtor shall retain 20 Samsara units for the life of the contract for a monthly fee of $1,750. |

6.3    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Second Amended Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before thirty (30) days after confirmation of this Second Amended Plan. Any such timely filed allowed claims will participate in the distribution for General Unsecured Creditors set out within this Second Amended Plan.

## <u>ARTICLE 7</u>
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    The Debtor will continue to operate as a trucking company. The income from operating the Debtor's trucking company will be used to fund this Second Amended Plan.  Debtor has provided projected financial information. Those projections are listed in Exhibit B.

7.2    Transportation Investors LLC is the sole owner of the Debtor. The Salvadors, who owned approximately .1% on the Petition Date surrendered their ownership interests in the Debtor pursuant to a settlement agreement approved by the Court. After confirmation of this Second Amended Plan, the current owners shall remain as owners of the Debtor. The Debtor shall remain governed by its current Operating Agreement, as amended.  Richard Coyle shall remain as President and Chief Executive Officer of the Debtor, who will continue to provide services to the Debtor unless replaced. Mr. Coyle does not own any interest in the Debtor and shall be paid a salary for his services, and an additional $35,000 payment on May 31, 2024.

7.3    The funding for the Effective Date payments and certain operating expenses will be paid from a loan from Transportation Investors in an amount up to $1.4 million.  The Convertible Loan Agreement for this funding was submitted as an Exhibit to Dkt. No. 205. Pursuant to the Loan Agreement, Transportation Investors has agreed to make up to $840,000 of a Credit Facility available to the Debtor as necessary to pay the Effective Date payments and certain operating expenses pursuant to the Second Amended Plan Budget attached as Exhibit B, but only if the Court enters an order confirming the Second Amended Plan and if the Debtor continues to operate materially consistent with the Second Amended Plan Budget.  As set forth in

the projections provided in Exhibit B, with these funds from Transportation Investors, the Debtor reasonably expects to be able to make the payments provided for by this Plan.

7.4     The Subchapter V Trustee is entitled to reasonable compensation for actual, necessary services not to exceed 2% of amounts disbursed by the Subchapter V Trustee.  As outlined in Article 4 above, the Debtor anticipates all distributions to creditors will be made by the Debtor, with no distributions by the Subchapter V Trustee. While the Debtor does not anticipate any distributions by the Subchapter V Trustee, in the event the Subchapter V Trustee is required to make any distributions, the Debtor anticipates the Trustee will receive reasonable compensation subject to a maximum of two percent (2%) of the funds received and disbursed after Confirmation. The Debtor anticipates that Second Amended Plan Payments will be made from the Debtor to the Trustee through Electronic Funds Transfers (EFTs) or other medium of efficient monetary transactions from the Debtor to the Trustee, as agreed and arranged between them.

7.5     <u>Post-Confirmation Management</u>.  The Post-Confirmation Officers/Managers of the Debtor and their compensation shall be as of the Effective Date and unless and until replaced as follows:

| NAME | POSITION |
|---|---|
| Richard Coyle | President and Chief Executive |
| Greg Huntington | Chief Financial Officer |

7.6     <u>Tax Consequences of this Second Amended Plan</u>.  CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THIS SECOND AMENDED PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS

## ARTICLE 8
## GENERAL AND MISCELLANEOUS PROVISIONS

8.1     <u>Title to Assets.</u>  If a plan is confirmed under § 1191(a), except as otherwise provided in this Second Amended Plan or in the order confirming this Second Amended Plan, (i) confirmation of this Second Amended Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of this Second Amended Plan, the property dealt with by this Second Amended Plan is free and clear of all Claims and Equity Interests of Creditors, Equity Security Holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earning from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, this Second Amended Plan, or the order confirming this Second Amended Plan, the Debtor shall remain in possession of all property of the estate.

8.2    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Second Amended Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Second Amended Plan, shall have the following meanings:

a.    "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b.    "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq.

c.    "Confirmation" shall mean the entry by the Court of an order confirming the Second Amended Plan.

d.    "Court" shall mean the United States Bankruptcy Court for the District of Idaho and the Judge assigned to this case.

e.    "Debtor" shall mean Off-Spec Solutions, LLC, with the status of and rights conferred to Debtor-in-possession by § 1107 of the Code.

f.    "Disposable Income" shall mean all surplus income received by the Debtor after the payment of the reasonable and necessary living expenses of the Debtor and dependents.

g.    "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Second Amended Plan has become final and unappealable.

h.    "Interests" shall mean the ownership interests held by the Debtor in Property.

i.    "Petition Date" shall mean August 5, 2022.

j.    "Second Amended Plan" shall mean this Chapter 11 Second Amended Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

k.    "Second Amended Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Second Amended Plan.

l.       "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.3    <u>Severability</u>. If any provision in this Second Amended Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Second Amended Plan.

8.4    <u>Binding Effect</u>. When this Second Amended Plan is confirmed, the provisions of this Second Amended Plan will bind the Debtor and all creditors, whether or not they accept this Second Amended Plan. The rights and obligations of any entity named or referred to in this Second Amended Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

8.5    <u>Captions</u>. The headings contained in this Second Amended Plan are for convenience of reference only and do not affect the meaning or interpretation of this Second Amended Plan.

8.6    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Idaho govern this Second Amended Plan and any agreements, documents, and instruments executed in connection with this Second Amended Plan, except as otherwise provided in this Second Amended Plan.

8.7    <u>Retention of Jurisdiction of the Court</u>. In addition to the continued jurisdiction after Second Amended Plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

a.       To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

b.       To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

c.       To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

d.       To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

e.       To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Second Amended Plan;

f.       To cause the correction of any defect, the curing of any omission or the

reconciliation of any inconsistency in this Second Amended Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Second Amended Plan;

g.      To consider the modification of this Second Amended Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

h.      Except as otherwise provided in this Second Amended Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Second Amended Plan;

i.      To enter a final order concluding and terminating this case;

j.      To review the reasonableness of any Post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Second Amended Plan; and

k.      To determine such other matters as may be provided for in the Confirmation order.

8.8     <u>Withdrawal of Plan</u>. At the option of the Debtor, this Second Amended Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.9     <u>Retention of Claims</u>. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.10    <u>Continued Reporting Requirements</u>. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation.

8.11    <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Second Amended Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.12    <u>Modification of the Plan</u>. The Debtor may propose amendments or modifications of this Second Amended Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Second Amended Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Second Amended Plan. The foregoing

provisions of this paragraph do not limit the ability the Debtor to modify the Second Amended Plan under § 1193 and applicable rules.

8.13    Early Payment. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Second Amended Plan to satisfy all Second Amended Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment of the projected amount to Class 14 claims, provided that the Debtor is current on any payments then required to Class 1 through Class 13 claims.

8.14    Preservation of Claims and Causes of Action. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules or this Second Amended Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation, any preference or other avoidance action. Except as expressly provided in the Second Amended Plan, the Confirmation order shall not bar the Debtor by res judicata, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor's Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Second Amended Plan, the Disclosure Statement, and the Debtor's filed Schedules and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.15    Default Under Plan. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fails to make a monetary payment when due under the Second Amended Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's claim for the value of the property, or (iii) disposes of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

8.16    Notice. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

If to the Debtor or Reorganized Debtor:            Off-Spec Solutions, LLC, dba Cool

DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
(SUBCHAPTER V) – PAGE 31

|  |  |
|---|---|
|  | Mountain Transport<br>c/o Richard Coyle, President and<br>CEO<br>1428 Madison Avenue<br>Nampa, ID 83687 |
| With copy to: | Jason E. Rios<br>Felderstein Fitzgerald Willoughby<br>Pascuzzi & Rios LLP<br>500 Capitol Mall, Suite 2250<br>Sacramento, CA 95814<br>jrios@ffwplaw.com |
|  | Matthew T. Christensen<br>Johnson May<br>199 N. Capitol Boulevard, Suite 200<br>Boise, ID 83702<br>mtc@johnsonmaylaw.com |
| With additional copy to: | Matthew W. Grimshaw<br>800 W. Main Street, Ste 1460<br>Boise, ID 83702<br>matt@grimshawlawgroup.com |

## ARTICLE 9
### EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

9.1    Vesting of Property. Except as otherwise expressly provided in the Second Amended Plan, Confirmation of the Second Amended Plan shall vest all the property of the Debtor's estate in the Debtor.

9.2    Property Free and Clear. Except as otherwise provided in the Second Amended Plan, all property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Second Amended Plan. This Second Amended Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Second Amended Plan.

9.3    Legal Binding Effect. The provisions of this Second Amended Plan shall bind all claimants, whether or not they accept this Second Amended Plan or whether or not their claim is impaired.

9.4    Effect on Third Parties. Nothing contained in the Second Amended Plan or in the documents to be executed in connection with the Second Amended Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Second Amended Plan and except that any creditor or party in interest may only recover from any third-party

DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
(SUBCHAPTER V) – PAGE 32

guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Second Amended Plan.

9.5    Release of Claims. The consideration to be distributed under the Second Amended Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including without limitation, any claim accruing after the Petition Date and prior to the Effective Date.

9.6    Permanent Injunction. Except as otherwise expressly provided in, or permitted under, this Second Amended Plan, the Confirmation order shall provide, among other things, that all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against the Debtor, or on account of claims released pursuant to section 9.05 of the Second Amended Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtor or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Second Amended Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.7    Exculpation. Except as otherwise provided in the Second Amended Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Second Amended Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Second Amended Plan.

9.8    Discharge [if under § 1191(a)]. If this Second Amended Plan is confirmed under § 1191(a), on the Effective Date of the Second Amended Plan, the Debtor may be discharged from any debt that arose before Confirmation of this Second Amended Plan, to the extent specified in § 1141(d)(1)(A) of the Code. However, the Debtor will not be discharged from any debt (i) imposed by this Second Amended Plan; (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) excepted from discharge 11 U.S.C. § 1141(d)(3). Notwithstanding the foregoing, Christina Lafferty has pending an appeal of a dismissal of her complaint alleging nondischargeability of a disputed claim. If Ms. Lafferty obtains a final, non-appealable judgment declaring her claim nondischargeable, that judgment shall be excepted from the discharge.

9.9     Discharge [if under § 1191(b)]. If the Second Amended Plan is confirmed under § 1191(b), Confirmation of this Second Amended Plan does not discharge any debt provided for in this Second Amended Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Second Amended Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Second Amended Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Notwithstanding the foregoing, Christina Lafferty has pending an appeal of a dismissal of her complaint alleging nondischargeability of a disputed claim. If Ms. Lafferty obtains a final, non-appealable judgment declaring her claim nondischargeable, that judgment shall be excepted from the discharge.

## ARTICLE 10
## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.1     Closing of the Case. After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured claimants, the Reorganized Debtor will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

10.2     Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail itself of the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Second Amended Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor and the Trustee, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In any Motion for Final Decree, the Reorganized Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtor' Motion for Final Decree, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

10.3     Continued Execution of the Plan after Closing. After closing of the case, the Reorganized Debtor shall remit all Second Amended Plan Payments to the appropriate holders of allowed claims provided for in the Second Amended Plan. Upon all payments having been distributed, the Reorganized Debtor shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.4     Professional Fees after Closing. After closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Second Amended Plan. In the event such professional services are rendered, or expenses are incurred by any professional person

therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtor, or the Trustee, in the event the Trustee remains in place to receive and distribute funds under the Second Amended Plan. Pursuant to Section 8.06(j) of this Second Amended Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute. In addition to the foregoing, the fees and costs owed to professional persons employed by the Debtor may be paid by the Debtor's sole member, Transportation Investors, LLC or one of its affiliates such as the Central Valley Fund.

DATED: July 13, 2023

OFF-SPEC SOLUTIONS, LLC, dba
COOL MOUNTAIN TRANSPORT

RICHARD COYLE
President and Chief Executive Officer

DATED: July 13, 2023

FELDERSTEIN FITZGERALD
WILLOUGHBY PASCUZZI & RIOS LLP

_/s/ Jason E. Rios_
JASON E. RIOS
Attorney for Debtor (*Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this July 18, 2023, I filed the foregoing   DEBTOR'S CHAPTER 11 SECOND AMENDED PLAN OF REORGANIZATION (Subchapter V)electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- **BMO Harris Bank N.A.**   elizabeth.steel@ge.com
- **Ronald Walter Brilliant**   rb@brilliantlawoffice.com
- **Laura E Burri**   lburri@morrowfischer.com, klee@morrowfischer.com
- **Matthew T. Christensen**   mtc@johnsonmaylaw.com, mtcecf@gmail.com;klu@johnsonmaylaw.com;acs@johnsonmaylaw.com;ard@johnsonmaylaw.com;ecf@johnsonmaylaw.com;atty_christensen@bluestylus.com;christensenmr81164@notify.bestcase.com
- **Robert A Faucher**   rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;spturner@hollandhart.com
- **Kimbell D Gourley**   kgourley@idalaw.com, shudson@idalaw.com
- **Daniel C Green**   dan@racineolson.com, mcl@racinelaw.net
- **Matthew W Grimshaw**   matt@grimshawlawgroup.com, ID22@ecfcbis.com
- **Tara Martens Miller**   tmmiller@hollandhart.com
- **Jason Ronald Naess**   Jason.r.naess@usdoj.gov
- **Paul J Pascuzzi**   ppascuzzi@ffwplaw.com, docket@ffwplaw.com
- **Randall A Peterman**   rap@givenspursley.com, kad@givenspursley.com;wandawhite@givenspursley.com
- **Kenneth D Peters**   kpeters@dresslerpeters.com, rmccandless@dresslerpeters.com
- **Jason E Rios**   jrios@ffwplaw.com, docket@ffwplaw.com
- **Tara J. Schleicher**   tara.schleicher@foster.com, kesarah.rhine@foster.com
- **Thomas Daniel Smith**   tom@pocatello-law.com
- **US Trustee**   ustp.region18.bs.ecf@usdoj.gov
- **Brent Russel Wilson**   bwilson@hawleytroxell.com, randerson@hawleytroxell.com
  Any others as listed on the Court's ECF Notice.

I FURTHER CERTIFY that on such date I caused my staff to serve the foregoing on the following non-CM/ECF Registered Participants via US Mail, postage prepaid:

ROCKY MOUNTAIN COMPANIES
c/o MICHAEL FERY, REGISTERED AGENT
350 N 9TH STREET, SUITE 200
BOISE, ID 83702

I-84 SOUTH, LLC
350 NORTH 9TH STREET, SUITE 200
BOISE, ID 83702

I-84 SOUTH, LLC
1428 MADISON AVE
NAMPA, ID 83687

I-84 INDUSTRIAL PARK, LLC
ATTN: LEGAL DEPARTMENT
350 NORTH 9TH STREET, SUITE 200
BOISE, IDAHO 83702

I-84 SOUTH, LLC
C/O JAMES A. BLAKE, REGISTERED AGENT
19593 MADISON ROAD
NAMPA, ID 83687

I-84 INDUSTRIAL PARK, LLC
MICHAEL N. FERY, REGISTERED AGENT
350 N. 9TH ST STE 200
BOISE, ID 83702

MICHAEL M. EIDELMAN
VEDDER PRICE P.C.
222 N. LASALLE STREET, SUITE 2300
CHICAGO, IL 60601

MICHAEL D. LIEFMAN
VEDDER PRICE P.C.
222 N. LASALLE STREET, SUITE 2300
CHICAGO, IL 60601

PAUL JUDGE
CFO SOLUTIONS, LLC DBA AMPLEO
13601 W MCMILLIAN RD #102
PMB 320
BOISE, ID 83713

BRIGETTE MCGRATH
2600 EAGAN WOODS DRIVE, SUITE 400
ST. PAUL, MN 55121

MARK LALUMONDIER
1305 12TH AVE. RD.
NAMPA, ID 83686

DAVID M UNSETH ON BEHALF OF CREDITOR XTRA LEASE LLC
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. BROADWAY SUITE 3600
ST. LOUIS, MO 63102

*/s/ Jason E. Rios*

Jason E. Rios

# EXHIBIT A

**LIQUIDATION ANALYSIS**

| Assets | Asset Value | % Recovery | $ Recovery | Lienholder | Est. Available for Payout FTB/CVF III | Admin. Claims |
|---|---|---|---|---|---|---|
| Cash | $200,000 [1] | 100% | $200,000 | FTB/CVF III | $200,000 | |
| Receivables | $748,378 [1] | 85% | $636,121 | FTB/CVF III | $636,121 | |
| Other Receivables | $119,535 [1] | 0% | $0 [4] | FTB/CVF III | $0 | |
| Accrued Revenue | $70,741 [1] | 85% | $60,130 | FTB/CVF III | $60,130 | |
| Inventory | $10,000 [1] | 0% | $0 | FTB/CVF III | $0 | |
| Deposits & Prepaids | | | | | | |
| WEX Bank | $325,000 [1] | 49% | $160,000 | | | $160,000 |
| Wheels Insurance Ltd | $1,472,708 [1] | 0% | $0 [4] | | -$240,000 | $240,000 |
| Ryder Equipment Lease Deposit | $124,965 [1] | 0% | $0 | Ryder | | |
| Penske Equipment Lease Deposit | $35,000 [1] | 0% | $0 | Penske | | |
| Other Deposits & Prepaids | $49,813 [1] | 0% | $0 | Other vendors | | |
| Investment in Wheels Insurance | $36,000 [1] | 0% | $0 [4] | FTB/CVF III | $0 | |
| Est. Recovery from Avoidance of Prepetition Transfers | $9,535 | 75% | $7,151 | | | $7,151 |
| Trucks | | | | | | |
| FTB/CVF III-Retain | $38,000 [2] | 85% | $32,300 | FTB/CVF III | $32,300 | |
| FTB/CVF III-Liquidated | $0 [2] | 0% | $0 | FTB/CVF III | $0 | |
| Diamler | $270,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Diamler-Rejected | $280,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| PACCAR-Rejected | $280,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| BMO-Rejected | $280,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Ascentium | $270,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Crossroads | $180,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Pawnee | $180,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Alliance | $180,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Pathward National Association | $90,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Warranty | $33,110 [1] | 0% | $0 | FTB/CVF III | $0 | |
| Trailers | | | | | | |
| Key Bank | $170,000 [2] | 74% | $126,058 [3] | FTB/CVF III | $126,058 | |
| Wells Fargo | $90,000 [2] | 0% | $0 [3] | FTB/CVF III | $0 | |
| Other Trailers | $154,048 [1] | 25% | $38,512 | FTB/CVF III | $38,512 | |
| Office & Other Equipment | $34,637 [1] | 25% | $8,659 | FTB/CVF III | $8,659 | |
| Collection & Recovery Costs | -$145,000 | 100% | -$145,000 | FTB/CVF III | -$145,000 | |
| **ESTIMATED GROSS PROCEEDS FROM LIQUIDATION** | | | **$1,123,932** | | **$716,781** | **$407,151** |

| Less FTB/CVF III Secured Lien | Secured Lien | | Est. Recovery | | | |
|---|---|---|---|---|---|---|
| Term Loan | $959,385 | 75% | $716,781 | | | |
| | $959,385 | 75% | **$716,781** | | -$716,781 | |

| Less Administrative Claims | Admin Claim | | Est. Recovery | | | |
|---|---|---|---|---|---|---|
| Est. Cost to Gather & Insure Equipment | $292,000 | 24% | $69,098 | | | |
| Est. Payroll Cost | $220,000 | 24% | $52,060 | | | |
| Est. Admin. Claim for use of Equipment | $709,386 | 24% | $167,866 | | | |
| Est. Gallagher Fees | $77,074 | 24% | $18,238 | | | |
| Est. Admin Claims for Professionals | $422,119 | 24% | $99,889 | | | |
| | $6,033,679 | 24% | **$407,151** | | | -$407,151 |

| Super Priority Claims | Super Priority | | Est. Recovery | | | |
|---|---|---|---|---|---|---|
| FTB/CVF III Super Priority Claim | $242,604 | 0% | $0 | | | |
| | $242,604 | 0% | **$0** | | | |

| Less Other Priority Claims | Priority | | Est. Recovery | | | |
|---|---|---|---|---|---|---|
| Internal Revenue Service | $11,749 | 0% | $0 | | | |
| Oregon DOT Claim | $44,102 | 0% | $0 | | | |
| | $55,851 | 0% | **$0** | | | $0 |

| | Unsecured | | Est. Recovery | | | |
|---|---|---|---|---|---|---|
| Less General Unsecured Claims | $6,293,810 | 0% | **$0** | | | $0 |

Note:
[1] Represented at the forecasted Book Value.
[2] Represented at an estimated Fair Market Value.
[3] FTB/CVF III has a lien over any residual value from the liquidation of equipment.
[4] TBD - Collecting these funds could take three or more years, and is very uncertain.

# EXHIBIT B

## Cool Mountain Transport

**Cash Basis**

| (in $) | 9/30/23 | 10/31/23 | 11/30/23 | 12/31/23 | 2024 | 2025 | 2026 | 2027 | 2028 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Jan-Aug |
| Subhaul Revenue | 791,708 | 892,939 | 852,315 | 939,021 | 12,938,424 | 15,471,274 | 17,858,262 | 20,178,685 | 15,099,708 |
| Transport Revenue | 407,130 | 444,056 | 402,118 | 431,950 | 5,241,515 | 5,370,971 | 5,387,545 | 5,380,547 | 3,667,189 |
| Other Revenue | 2,491 | 2,770 | 2,593 | 2,826 | 36,845 | 41,114 | 45,851 | 50,477 | 37,063 |
| **Total Revenue** | **1,201,328** | **1,339,766** | **1,257,026** | **1,373,797** | **18,216,783** | **20,883,360** | **23,291,658** | **25,609,710** | **18,803,959** |
| | | | | | | | | | |
| **Cost of Sales** | | | | | | | | | |
| Payroll - Drivers & Shop | 115,146 | 122,555 | 111,484 | 118,865 | 1,418,999 | 1,418,473 | 1,431,659 | 1,441,155 | 984,673 |
| Purchased Subhaul Expense | 642,603 | 723,281 | 690,375 | 760,607 | 10,480,123 | 12,531,732 | 14,465,192 | 16,344,735 | 12,230,763 |
| Fuel & Fuel Related | 101,872 | 109,603 | 99,633 | 107,090 | 1,299,922 | 1,327,108 | 1,363,400 | 1,396,010 | 970,215 |
| Leased & Rented Equipment | 12,760 | 14,062 | 15,110 | 15,812 | 257,353 | 295,397 | 358,342 | 421,256 | 311,915 |
| Repairs & Maintenance | 42,703 | 46,423 | 42,630 | 46,050 | 573,693 | 605,970 | 643,480 | 679,330 | 483,615 |
| Insurance | 87,886 | 111,886 | 87,886 | 87,886 | 1,125,976 | 1,154,386 | 1,182,796 | 1,211,206 | 815,921 |
| Licenses & Permits | 20,833 | 20,833 | 20,833 | 20,833 | 288,000 | 288,000 | 288,000 | 288,000 | 204,667 |
| Other Direct Costs | 31,517 | 34,566 | 32,733 | 35,302 | 461,180 | 518,781 | 571,684 | 622,672 | 453,142 |
| **Total Cost of Sales** | **1,055,320** | **1,183,209** | **1,100,685** | **1,192,446** | **15,905,245** | **18,139,848** | **20,304,554** | **22,404,364** | **16,454,911** |
| **Gross Profit** | **146,008** | **156,557** | **156,341** | **181,351** | **2,311,538** | **2,743,512** | **2,987,104** | **3,205,346** | **2,349,049** |
| _Gross Margin_ | _12.2%_ | _11.7%_ | _12.4%_ | _13.2%_ | _12.7%_ | _13.1%_ | _12.8%_ | _12.5%_ | _12.5%_ |
| | | | | | | | | | |
| **SG&A Expenses** | | | | | | | | | |
| Payroll - Non-Drivers | 72,046 | 72,046 | 72,046 | 72,047 | 902,935 | 892,894 | 977,910 | 1,062,926 | 746,402 |
| Outside Admin Services | 2,310 | 2,310 | 2,310 | 2,310 | 28,560 | 31,080 | 33,600 | 36,120 | 25,200 |
| Facilities Expenses | 10,923 | 10,923 | 10,923 | 10,923 | 135,048 | 146,964 | 158,880 | 170,796 | 119,160 |
| Legal & Professional Expenses | 2,750 | 2,750 | 2,750 | 2,750 | 34,000 | 37,000 | 40,000 | 43,000 | 30,000 |
| Other SG&A Expenses | 8,360 | 8,360 | 8,360 | 8,360 | 103,360 | 112,480 | 121,600 | 130,720 | 91,200 |
| **Total SG&A Expenses** | **96,389** | **96,389** | **96,389** | **96,390** | **1,203,903** | **1,220,418** | **1,331,990** | **1,443,562** | **1,011,962** |
| **NET OPERATING INCOME** | **49,619** | **60,168** | **59,952** | **84,961** | **1,107,635** | **1,523,094** | **1,655,114** | **1,761,785** | **1,337,087** |
| | | | | | | | | | |
| **Other Expenses/Income** | | | | | | | | | |
| Equipment P&I Payments-Other | 49,574 | 43,450 | 43,281 | 43,281 | 519,377 | 516,309 | 358,909 | 104,096 | 0 |
| Bankruptcy Professional Fees & Costs | 200,000 | 0 | 0 | 0 | 150,000 | 72,119 | 0 | 0 | 0 |
| Secured Lender | 0 | 0 | 0 | 0 | 100,315 | 231,047 | 914,183 | 0 | 0 |
| Financed Equipment Secured Claims | 221,319 | 0 | 0 | 0 | 33,260 | 0 | 0 | 0 | 0 |
| Leased Equipment Claims | 142,647 | 8,283 | 8,283 | 8,283 | 99,397 | 99,397 | 99,397 | 99,397 | 66,265 |
| Other Priority & Secured Claims | 53,948 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Expenses/(Income) | 6,000 | 6,000 | 6,000 | 6,000 | 86,000 | 96,000 | 96,000 | 96,000 | 64,000 |
| **Total Other Expenses/Income** | **673,487** | **57,733** | **57,565** | **57,565** | **988,349** | **1,014,872** | **1,468,489** | **299,493** | **130,265** |
| | | | | | | | | | |
| **NET (CASH) INCOME** | **(623,868)** | **2,435** | **2,387** | **27,396** | **119,286** | **508,222** | **186,625** | **1,462,291** | **1,206,822** |
| | | | | | | | | | |
| **CASH BALANCE** | | | | | | | | | |
| Beginning Cash | 207,823 | 200,000 | 200,000 | 241,049 | 206,919 | 317,983 | 689,639 | 465,219 | 568,226 |
| Cash Collections | 1,209,296 | 1,263,037 | 1,295,687 | 1,312,271 | 18,098,511 | 20,746,794 | 23,180,614 | 25,450,425 | 18,656,018 |
| TI Cash Contributions | 608,076 | 74,294 | 0 | 0 | 110,049 | 0 | 0 | 0 | 0 |
| Reserves for Equipment Replacement | 0 | 0 | 0 | 0 | 0 | 0 | (150,000) | (400,000) | (300,000) |
| Cash Expenditures | (1,825,196) | (1,337,331) | (1,254,639) | (1,346,400) | (18,097,497) | (20,375,138) | (23,105,033) | (24,147,418) | (17,597,137) |
| Est. Unsecured Creditors Payout | 0 | 0 | 0 | 0 | 0 | 0 | (150,000) | (800,000) | (750,000) |
| **Ending Cash** | **200,000** | **200,000** | **241,049** | **206,919** | **317,983** | **689,639** | **465,219** | **568,226** | **577,107** |

| | 5/31/23 | 6/30/23 | 7/31/23 | 8/31/23 | 9/30/23 | 10/31/23 | 11/30/23 | 12/31/23 | 1/31/24 | 2/29/24 | 3/31/24 | 4/30/24 | 5/31/24 | 6/30/24 | 7/31/24 | 8/31/24 | 9/30/24 | 10/31/24 | 11/30/24 | 12/31/24 | 1/31/25 | 2/28/25 | 3/31/25 | 4/30/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED CREDIT FACILITY** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Fifth Third Original Peterbilt Loan** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 938,609 | 927,718 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | (10,512) | (19,495) | (927,718) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **New Secured Term Loan** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 959,385 | 967,380 | 975,441 | 983,570 | 991,766 | 1,000,031 | 1,008,365 | 1,016,768 | 1,025,241 | 1,033,784 | 1,042,399 | 1,051,086 | 1,059,845 | 1,048,424 | 1,037,002 | 1,025,581 | 1,014,160 | 1,002,739 | 991,317 | 979,896 | 968,475 | 957,054 |
| Scheduled Payment | 0 | 0 | 959,385 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (20,253) | (20,158) | (20,063) | (19,968) | (19,873) | (19,777) | (19,682) | (19,587) | (19,492) |
| **Fifth Third M&E Loan** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 38,000 | 31,667 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | (6,599) | (6,561) | (31,667) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Fifth Third Revolver Line of Credit** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | (4,311) | (4,808) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **OTHER FINANCE VENDORS** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Mercedes Benz Financial Service** _(4 Tractors Returned)_ | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (34,579) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

_Gets vendor to 50% of Administrative Claim_

| | 5/31/23 | 6/30/23 | 7/31/23 | 8/31/23 | 9/30/23 | 10/31/23 | 11/30/23 | 12/31/23 | 1/31/24 | 2/29/24 | 3/31/24 | 4/30/24 | 5/31/24 | 6/30/24 | 7/31/24 | 8/31/24 | 9/30/24 | 10/31/24 | 11/30/24 | 12/31/24 | 1/31/25 | 2/28/25 | 3/31/25 | 4/30/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Mercedes Benz Financial Services USA LLC** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 116,894 | 117,639 | 115,647 | 113,666 | 103,523 | 101,444 | 99,373 | 97,269 | 95,172 | 93,061 | 90,899 | 88,761 | 86,591 | 84,426 | 82,229 | 80,036 | 77,829 | 75,592 | 73,356 | 71,092 | 68,827 | 66,549 | 64,215 | 61,907 |
| Scheduled Stipulation Payment | 0 | 0 | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (8,151) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Daimler Tractor Financial Services USA LLC** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 289,382 | 291,283 | 286,980 | 282,648 | 253,425 | 248,873 | 244,291 | 239,680 | 235,038 | 230,365 | 225,662 | 220,928 | 216,163 | 211,367 | 206,539 | 201,679 | 196,781 | 191,864 | 186,908 | 181,919 | 176,898 | 171,844 | 166,756 | 161,635 |
| Scheduled Stipulation Payment | 0 | 0 | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (24,864) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **PACCAR** _(4 Tractors Returned)_ | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **BMO** _(4 Tractors Returned)_ | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (30,664) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

_Gets vendor to 50% of Administrative Claim_

| | 5/31/23 | 6/30/23 | 7/31/23 | 8/31/23 | 9/30/23 | 10/31/23 | 11/30/23 | 12/31/23 | 1/31/24 | 2/29/24 | 3/31/24 | 4/30/24 | 5/31/24 | 6/30/24 | 7/31/24 | 8/31/24 | 9/30/24 | 10/31/24 | 11/30/24 | 12/31/24 | 1/31/25 | 2/28/25 | 3/31/25 | 4/30/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ascentium** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 375,588 | 378,130 | 371,534 | 364,894 | 335,323 | 328,438 | 321,507 | 314,528 | 307,502 | 300,429 | 293,307 | 286,138 | 278,920 | 271,653 | 264,337 | 256,972 | 249,556 | 242,091 | 234,575 | 227,008 | 219,390 | 211,720 | 203,998 | 196,225 |
| Scheduled Payment | 0 | 0 | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (22,886) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Crossroads** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 241,870 | 243,331 | 238,792 | 234,225 | 205,591 | 200,824 | 196,027 | 191,202 | 184,094 | 176,943 | 169,749 | 162,511 | 155,229 | 147,904 | 140,534 | 133,120 | 125,661 | 118,157 | 110,607 | 103,012 | 97,625 | 92,205 | 86,753 | 81,267 |
| Scheduled Payment | 0 | 0 | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (24,039) | 0 | 0 | 0 | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | (2,254) | 0 | 0 | 0 | 0 |
| **Pawnee - Capital Lease** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 229,555 | 224,572 | 219,562 | 214,526 | 190,812 | 185,620 | 180,401 | 175,154 | 168,843 | 162,498 | 156,118 | 149,704 | 143,256 | 136,773 | 131,292 | 125,781 | 120,240 | 114,670 | 109,069 | 103,439 | 97,778 | 92,087 | 86,365 | 80,612 |
| Scheduled Payment | 0 | 0 | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (18,651) | 0 | 0 | 0 | (1,036) | (1,036) | (1,036) | (1,036) | (1,036) | (1,036) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Alliance - Capital Lease** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 224,713 | 216,503 | 208,233 | 203,170 | 188,216 | 183,007 | 177,760 | 172,474 | 167,150 | 161,786 | 156,384 | 150,942 | 145,460 | 139,938 | 134,376 | 128,772 | 123,128 | 117,443 | 111,716 | 105,947 | 100,136 | 94,282 | 88,385 | 82,446 |
| Scheduled Payment | (9,855) | (9,855) | (9,855) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (9,855) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Pathward** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 125,674 | 126,538 | 124,345 | 122,137 | 110,726 | 108,424 | 106,107 | 103,773 | 101,424 | 99,059 | 96,677 | 94,279 | 91,864 | 89,433 | 86,985 | 84,520 | 82,038 | 79,540 | 77,024 | 74,490 | 71,940 | 69,372 | 66,786 | 64,182 |
| Scheduled Payment | 0 | 0 | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (9,188) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 43,942 | 44,088 | 37,796 | 31,630 | 168 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | (6,292) | (6,292) | (6,292) | (169) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (25,169) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank 2** _(Last payment made in January)_ | | | | | | | | | | | | | | | | | | | | | | | | |

| | 5/31/23 | 6/30/23 | 7/31/23 | 8/31/23 | 9/30/23 | 10/31/23 | 11/30/23 | 12/31/23 | 1/31/24 | 2/29/24 | 3/31/24 | 4/30/24 | 5/31/24 | 6/30/24 | 7/31/24 | 8/31/24 | 9/30/24 | 10/31/24 | 11/30/24 | 12/31/24 | 1/31/25 | 2/28/25 | 3/31/25 | 4/30/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Wells Fargo** | | | | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 103,971 | 104,362 | 101,436 | 98,499 | 82,277 | 79,268 | 76,247 | 73,215 | 70,172 | 67,117 | 64,051 | 60,973 | 57,884 | 54,783 | 51,671 | 48,547 | 45,411 | 42,263 | 39,103 | 35,932 | 32,748 | 29,553 | 26,346 | 23,126 |
| Scheduled Stipulation Payment | 0 | 0 | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | (13,274) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **LEASE VENDORS** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Ryder** | | | | | | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | $345,485 | | | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | Paid monthly in equal installments over five years. | | | | | | | | | | | | | | | | | | | | | |
| Notes | 4 + 15 Tractors returned | | Starting upon Plan confirmation | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| d Administrative Claim Payment* | 0 | 0 | 0 | 0 | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) |
| **Penske** | | | | | | | | | | | | | | | | | | | | | | | | |
| Reject 5 of 9 Trailers | | | | | 5 trailers returned this month | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | 0 | (11,551) | (4,041) | (4,178) | (4,107) | (4,209) | (4,057) | (4,159) | (4,134) | (4,085) | (4,186) | (4,136) | (4,137) | (4,137) | (4,137) | (4,187) | (4,088) | (4,189) | (4,038) | (4,088) | (4,139) | (4,039) | (4,190) | (4,120) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | (110,890) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Penske** | | | | | | | | | | | | | | | | | | | | | | | | |
| Reject 9 Tractors (original) | | | | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (21,772) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **XTRA Lease** | | | | | | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | | | $151,500 | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | | | Paid monthly in equal installments over five years | | | | | | | | | | | | | | | | | | | |
| Notes | 4 rent Trailers returned, 31 leased Trailers rejected | | | | Starting upon Plan confirmation | | | | | | | | | | | | | | | | | | | |
| Reject 31 remaining Trailers | 4 | 11 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) |
| **McKinney** | | | | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | 0 | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | (23,473) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Notes:  * Includes estimated tax, mileage and reefer expense if applicable.

| | 5/31/25 | 6/30/25 | 7/31/25 | 8/31/25 | 9/30/25 | 10/31/25 | 11/30/25 | 12/31/25 | 1/31/26 | 2/28/26 | 3/31/26 | 4/30/26 | 5/31/26 | 6/30/26 | 7/31/26 | 8/31/26 | 9/30/26 | 10/31/26 | 11/30/26 | 12/31/26 | 1/31/27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED CREDIT FACILITY** | | | | | | | | | | | | | | | | | | | | | |
| **Fifth Third Original Peterbilt Loan** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **New Secured Term Loan** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 945,632 | 934,211 | 922,790 | 911,369 | 899,947 | 888,526 | 877,105 | 865,684 | 854,262 | 842,841 | 831,420 | 819,999 | 808,577 | 797,156 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | (19,397) | (19,302) | (19,206) | (19,111) | (19,016) | (18,921) | (18,826) | (18,730) | (18,635) | (18,540) | (18,445) | (18,350) | (18,255) | (18,159) | (803,799) | 0 | 0 | 0 | 0 | 0 | 0 |
| **Fifth Third M&E Loan** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Fifth Third Revolver Line of Credit** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **OTHER FINANCE VENDORS** | | | | | | | | | | | | | | | | | | | | | |
| **Mercedes Benz Financial Service** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Mercedes Benz Financial Service** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 59,572 | 57,234 | 54,870 | 52,503 | 50,120 | 47,712 | 45,299 | 42,862 | 40,418 | 37,958 | 35,460 | 32,969 | 30,455 | 27,932 | 25,387 | 22,832 | 20,261 | 17,669 | 15,064 | 12,440 | 9,803 |
| Scheduled Stipulation Payment | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) | (2,717) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Daimler Tractor Financial Service** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 156,481 | 151,293 | 146,070 | 140,814 | 135,522 | 130,196 | 124,835 | 119,439 | 114,008 | 108,540 | 103,037 | 97,498 | 91,922 | 86,310 | 80,661 | 74,975 | 69,251 | 63,490 | 57,691 | 51,854 | 45,979 |
| Scheduled Stipulation Payment | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **PACCAR** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **BMO** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Ascentium** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 188,398 | 180,519 | 172,586 | 164,600 | 156,559 | 148,464 | 140,315 | 132,110 | 123,849 | 115,533 | 107,161 | 98,732 | 90,245 | 81,702 | 73,100 | 64,441 | 55,722 | 46,945 | 38,108 | 29,212 | 20,255 |
| Scheduled Stipulation Payment | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) | (9,154) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Crossroads** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 75,748 | 70,196 | 64,611 | 58,992 | 53,338 | 47,651 | 41,929 | 36,173 | 30,382 | 24,556 | 18,694 | 12,797 | 6,865 | 897 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (6,010) | (902) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Pawnee - Capital Lease** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 74,829 | 69,014 | 63,168 | 57,291 | 51,382 | 45,441 | 39,469 | 33,464 | 27,427 | 21,357 | 15,255 | 9,121 | 2,953 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (6,217) | (2,969) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Alliance - Capital Lease** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 76,463 | 70,436 | 64,365 | 58,249 | 52,089 | 45,883 | 39,633 | 33,336 | 26,993 | 20,604 | 14,169 | 7,686 | 1,155 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (6,587) | (1,164) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Pathward** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 61,561 | 58,921 | 56,263 | 53,587 | 50,893 | 48,180 | 45,449 | 42,698 | 39,929 | 37,141 | 34,333 | 31,507 | 28,660 | 25,795 | 22,909 | 20,004 | 17,079 | 14,133 | 11,168 | 8,182 | 5,175 |
| Scheduled Stipulation Payment | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) | (3,063) |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank 2** | | | | | | | | | | | | | | | | | | | | | |

| | 5/31/25 | 6/30/25 | 7/31/25 | 8/31/25 | 9/30/25 | 10/31/25 | 11/30/25 | 12/31/25 | 1/31/26 | 2/28/26 | 3/31/26 | 4/30/26 | 5/31/26 | 6/30/26 | 7/31/26 | 8/31/26 | 9/30/26 | 10/31/26 | 11/30/26 | 12/31/26 | 1/31/27 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Wells Fargo** | | | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 19,895 | 16,651 | 13,395 | 10,127 | 6,847 | 3,554 | 249 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (3,318) | (250) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **LEASE VENDORS** | | | | | | | | | | | | | | | | | | | | | |
| **Ryder** | | | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | | | | | | | | | | | | | | | | | | | |
| Notes | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| d Administrative Claim Payment* | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) |
| **Penske** | | | | | | | | | | | | | | | | | | | | | |
| Reject 5 of 9 Trailers | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | (4,120) | (4,120) | (4,121) | (4,171) | (4,071) | (4,172) | (4,023) | (4,073) | (4,124) | (4,024) | (4,174) | (4,125) | (4,125) | (4,125) | (4,158) | (4,158) | (4,059) | (4,159) | (4,011) | (4,061) | (4,111) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Penske** | | | | | | | | | | | | | | | | | | | | | |
| Reject 9 Tractors (original) | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **XTRA Lease** | | | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | | | | | | | | | | | | | | | | | | | |
| Notes | | | | | | | | | | | | | | | | | | | | | |
| Reject 31 remaining Trailers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) |
| **McKinney** | | | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Notes:

| | 2/28/27 | 3/31/27 | 4/30/27 | 5/31/27 | 6/30/27 | 7/31/27 | 8/31/27 | 9/30/27 | 10/31/27 | 11/30/27 | 12/31/27 | 1/31/28 | 2/29/28 | 3/31/28 | 4/30/28 | 5/31/28 | 6/30/28 | 7/31/28 | 8/31/28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED CREDIT FACILITY** | | | | | | | | | | | | | | | | | | | |
| **Fifth Third Original Peterbilt Loan** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **New Secured Term Loan** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Fifth Third M&E Loan** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Fifth Third Revolver Line of Credit** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **OTHER FINANCE VENDORS** | | | | | | | | | | | | | | | | | | | |
| **Mercedes Benz Financial Service** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Mercedes Benz Financial Service** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 7,148 | 4,472 | 1,784 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (2,717) | (2,717) | (2,717) | (1,795) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Daimler Tractor Financial Service** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 40,065 | 34,112 | 28,120 | 22,089 | 16,018 | 9,907 | 3,756 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (6,216) | (3,781) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **PACCAR** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **BMO** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Ascentium** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 11,238 | 2,160 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (9,154) | (9,154) | (2,174) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Crossroads** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Pawnee - Capital Lease** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Alliance - Capital Lease** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Pathward** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 2,148 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | (3,063) | (2,163) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Key Bank 2** | | | | | | | | | | | | | | | | | | | |

| | 2/28/27 | 3/31/27 | 4/30/27 | 5/31/27 | 6/30/27 | 7/31/27 | 8/31/27 | 9/30/27 | 10/31/27 | 11/30/27 | 12/31/27 | 1/31/28 | 2/29/28 | 3/31/28 | 4/30/28 | 5/31/28 | 6/30/28 | 7/31/28 | 8/31/28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Wells Fargo** | | | | | | | | | | | | | | | | | | | |
| Principal Balance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Stipulation Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **LEASE VENDORS** | | | | | | | | | | | | | | | | | | | |
| **Ryder** | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | | | | | | | | | | | | | | | | | |
| Notes | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| d Administrative Claim Payment* | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) | (5,758) |
| **Penske** | | | | | | | | | | | | | | | | | | | |
| Reject 5 of 9 Trailers | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | (4,013) | (4,161) | (4,113) | (4,113) | (4,063) | (4,164) | (4,164) | (4,065) | (4,149) | (4,002) | (4,100) | (4,150) | (4,052) | (4,150) | (4,103) | (4,152) | (4,103) | (4,153) | (4,153) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Penske** | | | | | | | | | | | | | | | | | | | |
| Reject 9 Tractors (original) | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **XTRA Lease** | | | | | | | | | | | | | | | | | | | |
| Recognized Administrative Claim | | | | | | | | | | | | | | | | | | | |
| Payout terms | | | | | | | | | | | | | | | | | | | |
| Notes | | | | | | | | | | | | | | | | | | | |
| Reject 31 remaining Trailers | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Estimated Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Scheduled Catch-up Payment* | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) | (2,525) |
| **McKinney** | | | | | | | | | | | | | | | | | | | |
| Scheduled Estimated Payment* | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (8,053) | (2,854) | (8,057) | (8,059) | (8,061) | (8,063) | (8,065) | (8,067) | (8,069) |
| Scheduled Catch-up Payment* | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Notes:

# EXHIBIT C

**Exhibit C**

Class 3          Mercedes Collateral

                      Contract Type:  Finance
                      Secured Party:  Mercedes Benz Financial Services
                             Status:  Surrender of collateral
                   Number of Vehicles:  4
                        Vehicle Type:  Tractor: 2021 Freightliner PT126 SLP
                               VIN #:  3AKJHHDR3MSMR8863
                                       3AKJHHDR5MSMR8864
                                       3AKJHHDR7MSMR8865
                                       3AKJHHDR9MSMR8866


Class 3          Mercedes Collateral

                      Contract Type:  Finance
                      Secured Party:  Mercedes Benz Financial Services USA LLC
                             Status:  Retain collateral
                   Number of Vehicles:  1
                        Vehicle Type:  Tractor: 2022 Freightliner New Cascadia
                               VIN #:  3AKJHHDR2NSND5866


Class 3          Mercedes Collateral

                      Contract Type:  Finance
                      Secured Party:  Daimler Tractor Financial Services USA LLC
                             Status:  Retain collateral
                   Number of Vehicles:  2
                        Vehicle Type:  Tractor: 2022 Freightliner New Cascadia
                               VIN #:  3AKJHHDR4NSND5867
                                       3AKJHHDR6NSND5868


Class 4          PACCAR Collateral

                      Contract Type:  Finance
                      Secured Party:  PACCAR INC
                             Status:  Surrender of collateral
                   Number of Vehicles:  4
                        Vehicle Type:  Tractor: 2020 Peterbilt 579
                               VIN #:  1XPBDP9X3LD630161
                                       1XPBDPPX5LD630162
                                       1XPBDP9X7LD630163
                                       1XPBDP9X9LD630164


Class 5          BMO Collateral

                      Contract Type:  Finance
                      Secured Party:  BMO Harris Bank NA
                             Status:  Surrender of collateral
                   Number of Vehicles:  4
                        Vehicle Type:  Tractor: 2020 Peterbilt 579
                               VIN #:  1XPBDP9X0LD630151
                                       1XPBDP9X1LD630157
                                       1XPBDP9X1LD630160
                                       1XPBDP9XXLD630156

Class 6          Ascentium Collateral

                            Contract Type:  Finance
                            Secured Party:  Ascentium Capital LLC
                                    Status:  Retain collateral
                        Number of Vehicles:  3
                            Vehicle Type:  Tractor: 2022 Freightliner New Cascadia
                                    VIN #:  3AKJHHDR9NSNB8367
                                            3AKJHHDR0NSNB8368
                                            3AKJHHDR2NSNB8369

Class 7          Crossroads Collateral

                            Contract Type:  Finance
                            Secured Party:  Crossroads Equipment Lease & Finance LLC
                                    Status:  Retain collateral
                        Number of Vehicles:  2
                            Vehicle Type:  Tractor: 2022 Freightliner Cascadia PT126 SLP
                                    VIN #:  3AKJHHDR9NSNB8370
                                            3AKJHHDR0NSNB8371

Class 8          Pawnee Collateral

                            Contract Type:  Finance
                            Secured Party:  Pawnee Leasing Corporation
                                    Status:  Retain collateral
                        Number of Vehicles:  2
                            Vehicle Type:  Tractor: 2022 Freightliner Cascadia
                                    VIN #:  3AKJHHDR4NSNB8373
                                            3AKJHHDR6NSNB8374

Class 9          Pathward Collateral

                            Contract Type:  Finance
                            Secured Party:  Pathward National Association
                                    Status:  Retain collateral
                        Number of Vehicles:  1
                            Vehicle Type:  Tractor: 2022 Freightliner New Cascadia
                                    VIN #:  3AKJHHDRXNSNB8376

Class 10         KeyBank Collateral

                            Contract Type:  Finance
                            Secured Party:  Key Equipment Finance
                                    Status:  Retain collateral
                        Number of Vehicles:  9
                            Vehicle Type:  Trailer: 2016 Utility Reefer
                                    VIN #:  1UYVS2532GU690806
                                            1UYVS2534GU690807
                                            1UYVS2536GU690808
                                            1UYVS2534GU690810
                                            1UYVS2536GU690811
                                            1UYVS2532GU822236
                                            1UYVS2536GU822238
                                            1UYVS2538GU822239

1UYVS2534GU822240

Class 10          KeyBank Previously Financed Collateral

|                          |                                   |
|--------------------------|-----------------------------------|
| Contract Type:           | Loan fully paid off in January 2023 |
| Status:                  | Paid off / not collateral          |
| Secured Party:           | N/A                               |
| Number of Vehicles:      | 4                                 |
| Vehicle Type:            | Trailer: 2016 Utility Reefer      |
| VIN #:                   | 1UYVS2534GU487321                 |
|                          | 1UYVS2536GU487322                 |
|                          | 1UYVS253XGU487324                 |
|                          | 1UYVS2531GU487325                 |

# EXHIBIT D

**Exhibit D**

McKinney Trailer Rentals

|  |  |
|---|---|
| Description: | Trailer Lease |
| Status: | Retained |
| Number of Vehicles: | 11 |
| Vehicle Type: | Trailer: 6-2022 Hyundai Dry Van |
|  | Trailer: 3-2020 Utility Reefer |
|  | Trailer: 2-2018 Utility Reefer |
| VIN #: | 3H3V532K1NS031431 |
|  | 3H3V532K3NS031432 |
|  | 3H3V532K5NS031433 |
|  | 3H3V532K7NS031434 |
|  | 3H3V532K9NS031435 |
|  | 3H3V532K0NS031436 |
|  | 3UTVS2534L8932704 |
|  | 3UTVS2536L8932705 |
|  | 3UTVS2538L8932706 |
|  | 1UYVS2535J2189301 |
|  | 1UYVS2537J2189302 |

Penske

|  |  |
|---|---|
| Description: | Trailer Lease |
| Status: | Retained |
| Number of Vehicles: | 4 |
| Vehicle Type: | Trailer: 2-2020 Great Dane '45 Bread |
|  | Trailer: 1-2016 Utility Dry Van |
|  | Trailer: 1-2020 Hyundai Dry Van |
| VIN #: | 1GR1A902XLB209462 |
|  | 1GR1A9021LB209463 |
|  | 1UYVS2538GG476840 |
|  | 3H3V532C0LT489073 |

Penske

|  |  |
|---|---|
| Description: | Trailer Lease |
| Status: | Rejected |
| Number of Vehicles: | 5 |
| Vehicle Type: | Trailer: 1-2015 Hyundai Reefer |
|  | Trailer: 2-2021 Hyundai Reefer |
|  | Trailer: 2-2020 Utility Reefer |
|  | 3H3V532C7FT649003 |
|  | 3H3V532C3MT694002 |
|  | 3H3V532C5MT694003 |
|  | 1UYVS2532L2900617 |
|  | 1UYVS2536L2900619 |

Penske

| | |
|---|---|
| Description: | Tractor Lease |
| Status: | Rejected |
| Number of Vehicles: | 9 |
| Vehicle Type: | Tractor: 9-2020 Freightliner |
| VIN #: | 3AKJHHFG2LSLN5171 |
| | 3AKJHHFG8LSLN5174 |
| | 3AKJHHFGOLSLN5198 |
| | 3AKJHHDR5LSLV9378 |
| | 3AKJHHDR7LSLV9379 |
| | 3AKJHHDR3LSLV9380 |
| | 3AKJHHDR7LSLV9382 |
| | 3AKJHHDR9LSLV9383 |
| | 3AKJHHDR0LSLV9384 |

Ryder

| | |
|---|---|
| Contract Type: | Tractor Lease |
| Status: | Rejected |
| Number of Vehicles: | 15 |
| Vehicle Type: | Tractor: 10-2023 Volvo |
| | Tractor: 5-2020 Freightliner |
| VIN #: | 4V4NC9TH7PN341951 |
| | 4V4NC9TH9PN341952 |
| | 4V4NC9TH0PN341953 |
| | 4V4NC9TH2PN341954 |
| | 4V4NC9TH4PN341955 |
| | 4V4NC9TH6PN341956 |
| | 4V4NC9TH8PN341957 |
| | 4V4NC9THXPN341958 |
| | 4V4NC9TH1PN341959 |
| | 4V4NC9TH8PN341960 |
| | 3AKJHHDR3LSLG6440 |
| | 3AKJHHDR9LSLG6443 |
| | 3AKJHHDR2LSLG6445 |
| | 3AKJHHDR6LSLG6447 |
| | 3AKJHHDR8LSLG6448 |

Ryder

| | |
|---|---|
| Contract Type: | Tractor Lease |
| Status: | Rejected |
| Number of Vehicles: | 4 |
| Vehicle Type: | Tractor: 4-2020 Freightliner |
| VIN #: | 3AKJHHDR5LSLG6441 |
| | 3AKJHHDR5LSLG6442 |
| | 3AKJHHDR0LSLG6444 |
| | 3AKJHHDR4LSLG6446 |

Wells Fargo

|  | |
|---|---|
| Contract Type: | Trailer Lease |
| Status: | Retained |
| Number of Vehicles: | 13 |
| Vehicle Type: | Trailer: 8-2018 Great Dane Dry Van |
| | Trailer: 5-2018 Silver Eagle Dolly |
| VIN #: | 1GRAA9025JB127491 |
| | 1GRAA9027JB127492 |
| | 1GRAA9022JB127495 |
| | 1GRAA9024JB127496 |
| | 1GRAA9026JB127497 |
| | 1GRAA9028JB127498 |
| | 1GRAA902XJB127499 |
| | 1GRAA9022JB127500 |
| | 1U3JX1015JBJ20422 |
| | 1U3JX1015JBJ20423 |
| | 1U3JX1015JBJ20424 |
| | 1U3JX1015JBJ20425 |
| | 1U3JX1015JBJ20426 |

Alliance Funding Group

|  | |
|---|---|
| Contract Type: | Tractor Lease |
| Status: | Retained |
| Number of Vehicles: | 2 |
| Vehicle Type: | Tractor: 2022 Freightliner New Cascadia |
| VIN #: | 3AKJHHDR2NSNB8372 |
| | 3AKJHHDR8NSNB8375 |

XTRA LEASE

|  | |
|---|---|
| Contract Type: | Trailer Lease |
| Status: | Rejected |
| Number of Vehicles: | 31 |
| Vehicle Type: | Trailer: 4-2019 Utility Reefer |
| | Trailer: 23-2020 Utility Reefer |
| VIN #: | 1UYVS253XL2936202 |
| | 1UYVS2531L2936203 |
| | 1UYVS2533L2936204 |
| | 1UYVS2535L2936205 |
| | 1UYVS2537L2936206 |
| | 1UYVS2539L2936207 |
| | 1UYVS2530L2936208 |
| | 1UYVS2539L2936210 |
| | 1UYVS2530L2936211 |
| | 1UYVS2532L2936212 |
| | 1UYVS2534L2936213 |

1UYVS2536L2936214
1UYVS2538L2936215
1UYVS253XL2936216
1UYVS2531L2936217
1UYVS2533L2936218
1UYVS2535L2936219
1UYVS2531L2936220
1UYVS2533L2936221
1UYVS2535L2936222
1UYVS2537L2936223
1UYVS2539L2936224
1UYVS2530L2936225
1JJV532D3GL954539
1GRAA06234J602780
1JJV532D7AL349219
1JJV532D0AL349224
1JJV532D2CL721116
1JJV532D2CL721181
1JJV532D5CL728917
3H3V532C9JT276006

# EXHIBIT E



Alliance Funding Group
17542 17th Street Ste. 200
Tustin, CA 92780
Toll Free: 800.978.8817
Fax: 714.704.1448

## LEASE DEFERRAL AGREEMENT

THIS **LEASE DEFERRAL AGREEMENT** ("Deferral Agreement") dated October 21, 2022 modifying Contract# 21-13454 ("Contract"), is entered into by and between Off-Spec Solutions, LLC with its principal place of business at 1428 Madison Avenue, Nampa, ID 83687 and **Alliance Funding Group** with a place of business at 17542 17th Street., Suite 200 Tustin, CA 92780 ("AFG").

TERMS: The Contract is being modified to the following:

- The 8/15/2022, 09/15/2022, and 10/15/2022 payments will be deferred.
- Monthly payments of $6,198.00 (plus applicable taxes) shall commence on 11/15/2022 to 01/15/2023
- Monthly payments of $9,297.00 (plus applicable taxes) shall commence on 2/15/2023 to 07/15/2023,
- Monthly payments of $6,213.75 (plus applicable taxes) shall commence on 08/15/2023 until the end of the term of the lease.

The original contract between Off-Spec Solutions, LLC and AFG and all terms and conditions of the Lease Agreement shall be and remain in full force and effect except as specifically modified by this Deferral Agreement. Off-Spec Solutions, LLC understands this is one-time contract adjustment and can and will not be offered again in the future.

All other terms and conditions of the Contract not specifically inconsistent with this Deferral Agreement and Guarantee(s) remain in full force and effect, and the terms of this Deferral Agreement shall be subject thereto.  Off-Spec Solutions, LLC acknowledges and affirms that each of the payments and other amounts under the Contract are due and owing in full, without setoff, defense or counterclaim, and Off-Spec Solutions, LLC waives any defenses, setoffs, claims and counterclaims against Alliance Funding Group with respect to payment of the amount owed under the Contract.

Counterparts.  This Agreement may be executed in any number of counterparts, all of which when taken together shall constitute one agreement binding on all parties, notwithstanding that all parties are not signatories to the same counterpart.

IN WITNESS WHEREOF, the parties have executed this LEASE DEFERRAL AGREEMENT as of the date first above written. A photocopy, facsimile or emailed signature of this Addendum will be legally admissible under the "best evidence rule" and shall be deemed an original. A signed copy of this Addendum sent by facsimile or emailed shall be treated as an original document and shall be admissible as evidence thereof, and all signatures thereon shall be binding as if manual signatures were personally delivered.



Alliance Funding Group
17542 17th Street Ste. 200
Tustin, CA 92780
Toll Free: 800.978.8817
Fax: 714.704.1448

**Off-Spec Solutions, LLC**

*Must be signed by Signor of original contract.*

By: _Greg Huntington_

Name: Greg Huntington

Title: Chief Financial Officer

December 01, 2022

**Alliance Funding Group**

By: _____

Name: Brian Knox

Title: Legal Recovery Manager